# REGIONAL SCHOOL DISTRICT NUMBER 12 *v.* TOWN OF BRIDGEWATER
## (SC 18174)

Rogers, C. J., and Norcott, Palmer, Zarella and McLachlan, Js.

Argued May 28—officially released August 4, 2009

*Robert M. Shields, Jr.*, with whom were *Wesley W. Horton* and *Charles W. Bauer*, for the appellant (defendant).

*George J. Kelly, Jr.*, with whom, on the brief, was *Richard D. O'Connor*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The issue in this appeal is whether the modification of the terms of the regional school plan establishing the plaintiff, Regional School District No. 12, to delete a provision whereby the plaintiff's elementary grade levels would remain in their home-town schools, and to add a provision whereby those grade levels would be consolidated into a single school,

constitutes an amendment to the plan under General Statutes § 10-47c.[1] The plaintiff filed an action for a judgment declaring that the modification did not constitute an amendment under § 10-47c, and the defendant, the town of Bridgewater, filed a counterclaim seeking a declaration that the modification was an amendment and an order of mandamus requiring the regional board of education (board) to conduct a referendum on the amendment pursuant to § 10-47c. The trial court rendered judgment declaring that the modification did not constitute an amendment subject to the referendum provisions of § 10-47c, and the defendant then filed this appeal.[2] We conclude that the modification was an amendment of the regional school plan under § 10-47c. Accordingly, we reverse the judgment of the trial court.

[1] General Statutes § 10-47c provides: "With the exception of the terms which pertain to the capital contribution of member towns, the transfer of property to the regional school district, the grades included, the size of the board of education and the representation of each town on the board and the towns to be served by the regional school district, the terms of the plan approved through referenda pursuant to section 10-45 may be amended as follows: If a regional board of education finds it advisable to amend the plan or if the legislative body of a town served by the regional board of education requests amendment of such plan, the regional board of education shall prepare a report on the proposed amendment, including the question to be presented, file a copy with the Commissioner of Education and the clerk of each member town and make copies of such report available to the public at a district meeting called to present the plan. After such public hearing, the board shall set the date for referenda which shall be held simultaneously in each member town between the hours of six a.m. and eight p.m. At least thirty days before the date of the referenda, the regional board of education shall notify the town clerk in each member town to call the referendum on the specified date to vote on the specified question. The warning of such referenda shall be published, the vote taken and the results thereof canvassed and declared in the same manner as is provided for the election of officers of a town. The town clerk of each town shall certify the vote of the town to the regional board of education and the Commissioner of Education. If the majority vote in each town of the district is in favor of the proposed amendment to the plan, such amendment shall take effect immediately."

[2] The defendant appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The trial court found the following facts.[3] In April, 1967, the defendant and the towns of Roxbury and Washington formed a temporary regional school study committee (study committee) pursuant to statute. In May of 1967, the study committee issued its final report containing its findings and recommendations, including a recommendation that "[e]lementary grades [kindergarten through fifth grade] [are] to remain in their present home town schools." Thereafter, the final report was presented to residents of the three towns at public hearings. In August, 1967, each town held a referendum on the question of whether it should join with the two other towns "in the establishment of a regional school district with the schools located in the towns of Bridgewater, Roxbury, and Washington, for the purposes of providing the necessary facilities and administering grades [kindergarten] to [twelfth grade] of the public schools?" Each town approved the referendum. Shortly thereafter, the state board of education approved the establishment of the district.

In March, 2007, the board voted to enter into an option agreement to purchase land in Roxbury as a potential site for a consolidated elementary school. On May 8, 2007, the defendant conducted a town meeting at which it adopted the following resolution: "Resolved, that the [defendant] requests, pursuant to . . . [§] 10-47c, that the [r]egional [s]chool [d]istrict [no.] 12 plan, as approved by the [s]tate [b]oard of [e]ducation on May 11, 1967, be amended by deleting the term, 'Elementary grades [kindergarten through fifth grade] to remain in their present home town schools' and inserting in its place 'The district consolidate [e]lementary grades [kindergarten through fifth grade] into a single [e]lementary [s]chool . . . to be located in . . . Roxbury.' " The

---

[3] The parties stipulated to several relevant facts that were not expressly found by the trial court.

defendant forwarded a copy of the resolution to the board.

Thereafter, the board notified the defendant and the towns of Washington and Roxbury that the resolution adopted at the defendant's town meeting did not constitute an amendment to the regional school plan under § 10-47c. The board then held a special meeting at which it approved a motion to adopt a resolution to appropriate funds and to authorize the issuance of bonds and temporary notes to finance the construction of a consolidated elementary school to be located in Roxbury. The board also adopted a motion authorizing a referendum on the new school project and the issuance of bonds and temporary notes to finance the project pursuant to General Statutes § 10-56.[4] Pursuant to this motion, the board delivered to the town clerks of the three towns a notice of a referendum to be held on June 19, 2007. Because of technical defects in the notice process, the referendum ultimately was cancelled.

Thereafter, the plaintiff brought an action seeking a declaratory judgment as to whether its plan to build a consolidated elementary school constituted an amendment to the regional school plan adopted in 1967, and therefore was subject to the referendum provision of § 10-47c, which requires a majority vote in each town

---

[4] General Statutes § 10-56 (a) provides in relevant part: "A regional school district shall be a body politic and corporate with power to sue and be sued; to purchase, receive, hold and convey real and personal property for school purposes; and to build, equip, purchase, rent, maintain or expand schools. Such district may issue bonds, notes or other obligations in the name and upon the full faith and credit of such district and the member towns to acquire land, prepare sites, purchase or erect buildings and equip the same for school purposes, or so authorized by referendum. Such referendum shall be conducted in accordance with the procedure provided in section 10-47c except that any person entitled to vote under section 7-6 may vote and the question shall be determined by the majority of those persons voting in the regional school district as a whole. The exercise of any or all of the powers set forth in this section shall not be construed to be an amendment of a regional plan pursuant to said section 10-47c. . . ."

in favor of the proposed amendment, or whether the proposal to appropriate funds for the new school was subject only to the referendum provision of § 10-56, which requires a majority vote of the regional school district as a whole for approval. The defendant brought a counterclaim seeking, inter alia, a declaratory judgment that the resolution adopted at its May 8, 2007 town meeting constituted an amendment to the regional school plan and an order of mandamus directing the board to hold a referendum on the amendment pursuant to § 10-47c. After a hearing, the trial court rendered judgment declaring that the defendant's resolution did not constitute an amendment under § 10-47c, and that the plaintiff was entitled to conduct a referendum on the proposal to obtain funding for the new consolidated elementary school under § 10-56.

This appeal followed. The defendant contends that the study committee recommendations approved by referendum in 1967 constitute a regional school "plan," within the meaning of § 10-47c, and that the modification of that plan to delete the recommendation that the elementary grades remain in their respective hometowns and to add a provision that the elementary grades be consolidated into a single school constitutes an amendment subject to the referendum provision of § 10-47c, which provides: "If the majority vote in each town of the district is in favor of the proposed amendment to the plan, such amendment shall take effect immediately." The plaintiff contends that, to the contrary, under this court's decision in *Atwood* v. *Regional School District No. 15*, 169 Conn. 613, 363 A.2d 1038 (1975), a proposal to construct a new school and to obtain financing for the school is not an amendment to a regional school plan subject to the referendum provision of § 10-47c, but is a financing proposal subject only to the referendum provision of § 10-56 (a), which provides that the referendum "question shall be deter-

mined by the majority of those persons voting in the regional school district as a whole." We agree with the defendant.

At the outset, we set forth the appropriate standard of review. Whether the consolidation of the three elementary schools into a single regional school constitutes an amendment to the regional school plan subject to the requirements of § 10-47c is a question of statutory interpretation over which our review is plenary. See *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 316, 968 A.2d 396 (2009). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

We begin our analysis with an overview of the relevant statutes governing the establishment of regional school districts, namely, General Statutes §§ 10-39, 10-

43, 10-45 and 10-47c.[5] Section 10-39 provides that, when two or more towns wish to establish a regional school district, they may appoint a temporary regional study committee to study the advisability of doing so. Section 10-43 (a) provides that, if, upon completion of its study, a temporary study committee determines that the establishment of a regional school district is desirable, it shall submit a written report to the state board of education.[6] Under § 10-43 (b), the state board of education must determine whether the report complies with § 10-43 (a) and, if so, it must certify to each town clerk of the participating towns that the study committee recommendations have been approved. Section 10-45 (a) provides that, after the state board of education has approved the recommendations, the member towns of a proposed school district must hold referenda "to determine whether a regional school district shall be established as recommended. . . . " Under § 10-45 (b), "[i]f the majority of the votes in each of the participating

---

[5] These statutes have been amended numerous times since the district was established in 1967. Except as discussed in the body of this opinion, the amendments are not relevant to issues raised in this appeal. For convenience, we refer in this opinion to the current version of each statute.

[6] The study committee's report must contain "(1) the findings of the committee with respect to the advisability of establishing a regional school district, (2) the towns to be included, (3) the grade levels for which educational programs are to be provided, (4) detailed educational and budget plans for at least a five-year period including projections of enrollments, staff needs and deployment and a description of all programs and supportive services planned for the proposed regional school district, (5) the facilities recommended, (6) estimates of the cost of land and facilities, (7) a recommendation concerning the capital contribution of each participating town based on appraisals or a negotiated valuation of existing land and facilities owned and used by each town for public elementary and secondary education which the committee recommends be acquired for use by the proposed regional school district, together with a plan for the transfer of such land and facilities, (8) a recommendation concerning the size of the board of education to serve the proposed regional school district and the representation of each town thereon, and (9) such other matters as the committee deems pertinent." General Statutes § 10-43 (a).

towns is affirmative, a regional school district composed of such towns is established . . . ."

Section 10-47c provides in relevant part: "[T]he terms of the plan approved through referenda pursuant to section 10-45 may be amended as follows: If a regional board of education finds it advisable to amend the plan or if the legislative body of a town served by the regional board of education requests amendment of such plan, the regional board of education shall prepare a report on the proposed amendment, including the question to be presented, file a copy with the Commissioner of Education and the clerk of each member town and make copies of such report available to the public at a district meeting called to present the plan. After such public hearing, the board shall set the date for referenda which shall be held simultaneously in each member town between the hours of six a.m. and eight p.m. . . . . If the majority vote in each town of the district is in favor of the proposed amendment to the plan, such amendment shall take effect immediately."

These provisions make clear that, as this court previously has held, the "plan" referred to in §§ 10-45 and 10-47c "consists of the recommendations found in the final report of the study committee." *Atwood* v. *Regional School District No. 15*, supra, 169 Conn. 621. The scope and meaning of the word "amendment" as used in § 10-47c, however, is not clear. The word is not statutorily defined and neither the defendant nor the plaintiff claims that the word clearly and unambiguously applies to *all* deviations from the recommendations of the study committee that are not expressly excluded from the scope of 10-47c.[7] Accordingly, in

[7] The defendant does suggest that, whenever a member town has submitted a request for an amendment pursuant to § 10-47c, the board must treat the proposed change as an amendment and schedule referenda on it in the member towns. We see no evidence, however, that the legislature intended to grant member towns unfettered discretion to determine whether a proposed modification to a plan, no matter how insignificant, requires a referendum under § 10-47c. The study committee recommendations at issue in the pre-

determining whether § 10-47c applies to the proposal at issue in the present case, we may look to the "legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." *Sastrom* v. *Psychiatric Security Review Board*, supra, 291 Conn. 316.

In addressing the question of what constitutes an amendment under § 10-47c, we do not write on a blank slate. In *Atwood*, the plaintiffs, taxpayers of the towns of Middlebury and Southbury, sought a judgment declaring that the proposal of the defendant, Regional School District No. 15, to build a new regional high school in Southbury constituted an amendment to the original study committee report, which had recommended that the regional high school be housed in the existing Southbury high school. *Atwood* v. *Regional School District No. 15*, supra, 169 Conn. 614–15. The defendant claimed that its proposal to issue bonds for the construction of the new high school was not an amendment, but was a financing proposal subject only to § 10-56. Id., 620. The trial court rendered judgment for the defendant and the plaintiffs appealed to this court. Id., 614.

On appeal, this court determined that the "plan" referred to in § 10-47c consisted of the recommendations made in the final report of the study committee for the defendant, "including those concerning the use of then existent high school facilities . . . ." Id., 621. We then concluded that, although "the provisions of

sent case, for example, recommend that the regional high school offer a course in the history of the far east. If the board determined that the high school should, instead, offer a course in European history, it seems highly unlikely that the legislature intended to require the board to put the member towns to the inconvenience and expense of a referendum on the question at the request of any member town.

§ 10-47c literally apply to the proposal to construct a new high school"; id.; that fact was not dispositive because "[t]he provisions of § 10-56 also literally apply to the issuing of the bonds necessary to build the high school." Id. We reasoned that "[b]oth sections cannot be construed as governing the procedure for approving the proposed project. Such a construction would require first a plurality in each town to approve the construction of the school, and then a plurality in the district as a whole to approve the issuance of the necessary bonds. The second approval, though explicitly required by § 10-56, would be reduced to a meaningless formality." Id.

We then noted that § 10-47c expressly excluded certain terms of the plan from the amendment procedure,[8] and stated that "[i]t is not unreasonable to suppose that terms of the plan relating to areas other than those specifically excluded were also intended to be excepted from the provisions of § 10-47c.[9] This supposition is supported by the fact that though § 10-47c refers to amendments of the terms of the plan generally, § 10-56 specifically provides a procedure for the approval of bond issues." Id., 622. We further noted that § 10-56 had been amended by No. 74-239 of the 1974 Public Acts to provide that " '[t]he exercise of any or all of the powers set forth in this section shall not be construed to

---

[8] When *Atwood* was decided in 1975, the applicable version of § 10-47c excluded "the terms which pertain to the capital contribution of the member towns, the transfer of property to the regional school district, the grades included and the towns to be served by the regional school district . . . ." General Statutes (Cum. Sup. 1969) § 10-47c.

[9] In reaching this conclusion, this court inexplicably failed to follow the rule of statutory construction that "expressio unius est exclusio alterius, which may be translated as the expression of one thing is the exclusion of another. . . . [W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 851, 937 A.2d 39 (2008).

be an amendment of a regional plan pursuant to . . . [§] 10-47c.' " Id., 622–23. We then concluded that "§ 10-47c applies only to fundamental amendments of the terms of the plan"; id., 623; such as the size of the regional board and the number of representatives from each town, and did not apply to the terms "relating to the facilities to be provided by the region and estimates of their cost . . . ." Id. We stated: "That the extraordinary requirement of approval by a plurality in each town is a prerequisite to such fundamental changes is not surprising, since such changes directly affect the voting rights of each individual elector." Id. Accordingly, we concluded that the proposal to build the new high school was not an amendment of the regional school plan, subject to the referendum provision of § 10-47c. Id.

In the present case, the plaintiff contends that, under *Atwood*, in order to constitute an amendment to a plan under § 10-47c, "the proposed action must be one that alters either the structure of the district itself, or the voting power of the district's residents." Therefore, it contends, the proposal to consolidate the three hometown elementary schools into a single regional school is not an amendment. The defendant contends that: (1) this case is factually distinguishable from *Atwood*; and (2) this court should overrule its holdings in *Atwood* that §§ 10-56 and 10-47c are mutually exclusive and that only amendments altering the structure of the regional school district or the voting power of the district's residents come within the scope of § 10-47c. We agree with the defendant that our reasoning in *Atwood* was flawed.[10]

---

[10] We need not decide whether, under the construction of § 10-47c that we adopt today, the proposal to construct a new high school in the same town as the original high school that was at issue in *Atwood* would have constituted an amendment subject to the provisions of that statute. It seems likely, however, that that case is factually distinguishable, because, as the defendant in the present case claims, "[a]ny rational voter realizes that the passage of time will render any school facility obsolete or in need of substantial renovations."

The basic flaw in *Atwood* was our conclusion that §§ 10-56 and 10-47c could not both "be construed as governing the procedure for approving the proposed project," because doing so would render approval under § 10-56 a "meaningless formality." Id., 621. Under § 10-47c, the legislature intended to allow the voters of any single member town effectively to veto proposed amendments to the regional school plan. If the amendment is approved, however, and requires funding, the legislature intended that the amount and method of funding would be decided by the voters of the district as a whole under § 10-56. Thus, each statute has a distinct function and applies to a distinct phase of the process. In other words, contrary to our suggestion in *Atwood*, a determination that § 10-56 applies to the funding of a proposal does not compel the conclusion that § 10-47c does not apply to the approval of the proposal in the first instance.

We also see no basis for our suggestion in *Atwood* that § 10-47c applies only to changes, such as the size of the regional board and the number of representatives from each town, that "directly affect the voting rights of each individual elector" in the regional school district. Id., 623. If the legislature had intended to limit § 10-47c in such a way, it could have done so expressly. It is more reasonable to conclude that the legislature enacted § 10-47c so that the individual towns that had voted to join a regional school district in reliance on the recommendations of the study committee—i.e., the "plan"—would have the opportunity to vote on any change to an existing plan that is not incidental, regardless of the nature of the change.[11] This interpretation

[11] We recognize that "our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 538, 800 A.2d 1102 (2002). We are not overturning the result in *Atwood*, however, but only our conclusion that § 10-47c applies only to amendments that directly affect the voting rights of electors. Moreover, following our decision in *Atwood*, there have been no decisions by this court

is consistent with § 10-45 (b), which requires that referenda on the establishment of regional school districts contain the question: "Shall a regional school district be established *in accordance with the plan approved by the [s]tate [b]oard of [e]ducation* . . . ."[12] (Emphasis added.) In addition, nothing in the relevant statutory scheme expressly grants regional school districts the power to create or modify the terms of a plan.[13]

or the Appellate Court that have relied on our construction of § 10-47c in that case.

[12] When we released our decision in *Atwood*, the applicable version of § 10-45 required that the referendum contain the following language: " 'For establishing a regional school district in accordance with the plan approved by the state board of education on [date], YES...................' and 'For establishing a regional school district in accordance with the plan approved by the state board of education on [date], NO...............' " General Statutes (Cum. Sup. 1969) § 10-45.

[13] The plaintiff points out that § 10-56 (a) authorizes regional school districts " 'to purchase, receive, hold and convey real and personal property for school purposes; and to build, equip, purchase, rent, maintain or expand schools.' " The plaintiff also points out that § 10-56 (a) provides that " '[t]he exercise of any or all of the powers set forth in this section shall not be construed to be an amendment of a regional plan pursuant to said section 10-47c.' " The plaintiff contends that, under these provisions, the construction of a school by a regional school district is exempt from the provisions of § 10-47c. Reading § 10-56 (a) in conjunction with the statutes governing the adoption and amendment of regional school plans, however, we conclude that § 10-56 (a) authorizes a regional school district to construct a school only if the school is contemplated under the regional school plan. If § 10-56 (a) were construed to authorize regional school districts to build and equip schools entirely as they see fit, then the requirement under § 10-43 (a) that the study committee include in its final report a description of the facilities recommended and estimates of the cost of land and facilities would be superfluous. See, e.g., *State* v. *Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." [Internal quotation marks omitted.]). In other words, the study committee's recommendations, and the opportunity for the townspeople to vote on them under § 10-45, would be meaningless. As we have indicated, we need not decide in this case whether the *replacement* of a school that was contemplated in the original regional school plan is subject to the provisions of § 10-47c. See footnote 10 of this opinion. We conclude, however, that the construction of a *type* of school that was not contemplated under the original plan—i.e., a consolidated school, as distinct from a traditional hometown school—is not within the powers granted to the board under § 10-56 (a).

Whether a change is merely incidental under § 10-47c must be determined on a case-by-case basis. In making that determination, the court should consider whether the proposal is of a type that a reasonable person would expect to be included in an original plan and whether it is reasonably likely that the inclusion of the proposal in the original plan could have affected an elector's vote.

We conclude that the proposal to consolidate the three separate elementary schools into a single school, thereby eliminating elementary schools in two towns, is not an incidental change to the regional school plan and, therefore, constitutes an amendment to the plan under § 10-47c. The plan expressly provided in two separate places that the elementary grades would remain in their respective hometown schools. In contrast to the provision that the middle school grades would "be housed *initially* in the present Washington High School facility"; (emphasis added); the plan did not indicate in any way that keeping the district's elementary schools in their respective hometowns was to be a temporary arrangement. In light of the middle school provision, a reasonable person would have believed that, if future consolidation of the elementary schools were a possibility, it would have been mentioned in the plan.[14] In addition, it is reasonable to conclude that

[14] The plaintiff disputes this reading of the study committee recommendations and contends that they support a conclusion that the location of the elementary schools in their respective hometowns was intended to be a temporary arrangement. In support of this claim, the plaintiff points out that the recommendations state that "the Washington facility should serve adequately for the first few years of regional operation." The plaintiff takes this language out of context. The relevant paragraph provides: "The [study] committee suggests that the [m]iddle [s]chool be housed initially in the present Washington High School facility, after some renovations to outfit it for that purpose. Washington's elementary facilities would also need some added space. But the combined costs of these two projects would be considerably less than the building of a new [m]iddle [s]chool. Undoubtedly, as enrollments increase, this will have to be done, but the Washington facility should serve adequately for the first few years of regional operation." It is

the plan provided for hometown elementary schools because it was important to the townspeople in the proposed district to keep their elementary school children in schools close to home and, therefore, they would have been less likely to approve a regional school plan that called for a consolidated elementary school.[15] Indeed, the legislative history of No. 698 of 1969 Public Acts (P.A. 698), which amended the statutes pertaining to regional school districts; see General Statutes (Cum. Sup. 1967) § 10-40 et seq.; to clarify that the study committee recommendations constituted the regional school plan and to provide that the townspeople would vote on that plan shows that many towns initially resisted the establishment of regional school districts because the townspeople were under the misconception that regionalization necessarily would require giving up local schools.[16]

clear to us that the "Washington facility" referred to in the last sentence of this paragraph was the existing Washington High School facility that was to house the new regional middle school. At most, the paragraph indicates that, at some point, the Washington elementary school would require renovations to increase its size. There is no suggestion that the school eventually would be eliminated altogether.

[15] Indeed, the plaintiff concedes that "[t]here is no doubt that the member towns or the residents of those towns might find [the consolidation of the elementary schools to be] highly significant for a number of strongly-held political, historical or personal reasons."

[16] Section 7 of P.A. 698 amended § 10-45 to require the study committee to conduct referenda in each member town on the establishment of a regional school district "in accordance with the plan approved by the state board of education . . . ." During the public legislative committee hearings on the bill that was enacted as P.A. 698, W. Raymond James, then chairman of the board of education for Regional School District No. 4, testified that there was a popular misconception that regionalization required towns to give up their local schools and that, when he had campaigned in favor of regionalization, his "[principal] . . . theme . . . was that we wanted to keep our own school in our own town and we tried to point out that what these people are talking about is they want to go to their own [parent teacher organization], they want to be right around the corner from the school, and they want to help in the lunch program . . . . Of course, that would be exactly the same." Conn. Joint Standing Committee Hearings, Education, Pt. 2, 1969 Sess., p. 542; see also id., p. 534, remarks of Carol Cook, a member of the board of education for Regional School District No. 12 ("it seems as

Our conclusion also is supported by the legislative genealogy of the statutes governing the establishment of regional school districts. General Statutes § (Rev. to 1958) § 10-48 provided in relevant part that, "[i]f a regional board of education finds it inadvisable to purchase a site in the town or towns approved in the original referendum held in accordance with the provisions of section 10-45, it may recommend that the site be located in another town or towns and arrange for a referendum to act upon its recommendation to be held in each of the towns comprising the district in the manner provided in section 10-45. . . ." This statute was repealed in 1969 when the legislature enacted the amendment procedures set forth in § 10-47c, which authorize not only the board, but also any member town, to seek an amendment to the plan. See P.A. 698, §§ 12 and 27. We see no evidence, however, that the legislature had concluded that a regional board no longer would be required to seek the approval of each member town before relocating a school from one town to another town. Rather, it is more reasonable to conclude that, by enacting § 10-47c, the legislature intended to expand the referendum requirement to apply to any amendment to the plan. We conclude, therefore, that the defendant's proposal to delete the plan's provision calling for separate elementary schools and to add a provision for a consolidated elementary school was an amendment to the plan subject to the referendum provision of § 10-47c.

At oral argument before this court, however, the plaintiff pointed out that, when the regional school district was established in 1967, voters were required to vote solely on the question of whether a regional school district should be established; see General Statutes (Cum. Sup. 1967) § 10-45; and the statutes governing

though most of our Connecticut towns are very jealous of their local control of education").

the establishment of regional school districts contained no reference to a "plan." The plaintiff argued that, although § 10-47c and the referendum provision of the current version of § 10-45, which were enacted in 1969; see P. A. 698, §§ 7 and 12; applied retroactively to preexisting regional school districts, the 1969 amendments could not make the study committee's recommendations binding on regional school district boards retroactively because the voters who had approved the preexisting regional school districts had not voted on the recommendations.

We are not persuaded. The 1967 statutes required the study committee to conduct referenda not only on the establishment of the regional school plan, but also on the location of the schools. See General Statutes (Cum. Sup. 1967) § 10-45.[17] The 1967 statutes also required the study committee to prepare a final report containing its findings "with respect to the advisability of establishing a regional district, the towns to be included, the facilities recommended and estimates of the cost of land and facilities." General Statutes (Cum. Sup. 1967) § 10-43. The study committee was also required to present the report to member towns in open hearings prior to the referendum on the establishment of a regional school district. See General Statutes (Cum. Sup. 1967) §§ 10-43 and 10-45. Moreover, although it was not required to do so by statute, the study committee's report in the present case contained detailed recommendations for the grade levels to be included, the

---

[17] General Statutes (Cum. Sup. 1967) § 10-45 provides in relevant part: "The presentation of such proposal [for establishing a regional school district] on the voting machines used [during the referendum] shall be as follows: Shall the town of ............................................. join with the following-named towns .......................... [and] .......................... in the establishment of a regional school district with the school located in the [towns/town of] ............................... ..........for the purpose of providing the necessary facilities and administering grades ................ through ................ of the public schools? YES .................................... NO ............."

grade levels for which educational programs were to be provided, educational plans, the distribution of costs among the member towns, operating expenses, projected enrollment and other matters. It is reasonable to conclude that, when the legislature amended the statutory scheme in 1969 to provide that the recommendations of the study committee constituted the regional school plan and that amendments to the plan were subject to referendum under § 10-47c, and when it provided that these amendments were applicable to existing regional school districts; see P.A. 698, § 21, now codified at General Statutes § 10-63h; it intended that study committee recommendations for existing regional school districts would henceforth be considered plans subject to the amendment requirements of § 10-47c, even though the townspeople technically had not voted on the recommendations in the referenda. Accordingly, we reject the plaintiff's claim that the study committee recommendations in the present case do not constitute a "plan" under the relevant statutes.

The plaintiff also argues that, even if study committee recommendations made prior to 1969 generally are plans subject to the amendment provisions of § 10-47c, the study committee recommendations at issue in this case are not, because they expressly provided that "[t]he program and facilities discussed in this report are the [study] committee's suggestions only. Should a region be established, the . . . board . . . would determine the exact program and facilities for the district. The . . . board is bound only by the broad provisions outlined in the referendum proposal on page [twelve] of this report." The language accompanying the referendum question on pages twelve and thirteen of the recommendations stated that, "[w]ithin the broad limits of the above proposal, which is prescribed by law, the . . . board . . . would determine the program and facilities of the regional district. Logically, the board could be expected to give due consideration

to the recommendations of this study committee, but it is not legally bound by them." We disagree. First, although the board might not have been bound by all of the recommendations of the study committee when the district was established in 1967, it would appear that the board was not free to change the location of the schools unilaterally, but was legally bound by the referenda establishing the location of the schools unless the towns approved their relocation by referenda. See General Statutes (Cum. Sup. 1967) § 10-45 and General Statutes (Rev. to 1958) § 10-48. The study committee had no authority to exempt the board from these statutory provisions. Second, as we have explained, the law was retroactively amended in 1969 to provide that the voters would vote not only on the establishment of a regional school district, but also on the plan, and that any amendments to the plan must be approved by each individual town. We conclude that the mere inclusion in the 1967 study committee recommendations of a generally accurate statement of the then existing law does not exempt the recommendations from the retroactive effect of the 1969 amendments.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment declaring that the proposal adopted by resolution at the defendant's May 7, 2007 town meeting constitutes an amendment to the regional school district plan and is subject to § 10-47c, and to render judgment for the defendant on its application for a writ of mandamus.

In this opinion the other justices concurred.