THOMAS C. FOLEY ET AL. *v.* STATE ELECTIONS
ENFORCEMENT COMMISSION ET AL.
(SC 18646)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Gruendel, Js.

Argued July 20—officially released July 20, 2010*

---

* July 20, 2010, the date that this court issued the order affirming the denial of the temporary injunction, is the operative date for all substantive and procedural purposes.

*Wesley W. Horton*, with whom were *Brendon P. Levesque, Ben M. Krowicki, Daniel I. Papermaster* and, on the brief, *Daniel J. Krisch*, for the appellants (plaintiffs and intervening plaintiffs).

*Gregory T. D'Auria*, senior appellate counsel, with whom were *Maura Murphy Osborne*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, *Perry Zinn Rowthorn*, associate attorney general, and *Michael K. Skold*, assistant attorney general, for the appellees (named defendant et al.).

*William F. Gallagher*, with whom were *R. Bartley Halloran* and, on the brief, *David McCarry*, for the appellee (defendant Fedele 2010).

*Opinion*

ROGERS, C. J. The present case requires us to interpret several provisions of the Citizens' Election Program (election program), General Statutes § 9-700 et seq., which provides public financing to candidates for certain state offices under specified conditions. The plaintiffs, Thomas C. Foley and Foley for Governor,

Inc.,[1] appeal[2] from the ruling of the trial court denying their motion for a temporary injunction. The trial court denied the plaintiffs' request for a temporary injunction to: (1) enjoin the named defendant, the state elections enforcement commission (commission),[3] from approving the formation of the defendant Fedele 2010 Joint Gubernatorial Campaign Committee (joint committee) pursuant to General Statutes § 9-709;[4] and (2) enjoin

---

[1] Because the trial court granted a motion by R. Nelson "Oz" Griebel and Oz Griebel for Governor, Inc., to intervene as interested parties, all references to the plaintiffs also include Griebel and Oz Griebel for Governor, Inc.

[2] The plaintiffs appeal pursuant to the granting of certification to appeal by the Chief Justice under General Statutes § 52-265a (a), which provides: "Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based."

"[T]his court consistently has stated that, in the absence of a statutory provision to the contrary, a denial or grant of a temporary injunction does not constitute a final judgment for purposes of appeal. . . . This is so because the purpose of a temporary injunction is to [maintain] the status quo while the rights of the parties are being determined. . . . Similarly, the denial of a temporary injunction is a determination that the status quo need not be maintained while the court determines the rights of the parties. By contrast, a permanent injunction effects a final determination of [those] rights. . . . Under this well established law, therefore, the denial by the court of [an] application for a temporary injunction [is] merely an interlocutory order and is not a final judgment for purposes of appeal." (Citations omitted; internal quotation marks omitted.) *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 811, 917 A.2d 951 (2007). It is well established, however, that appeals from interlocutory orders may be taken pursuant to § 52-265a. See *State* v. *Fernando A.*, 294 Conn. 1, 5 n.3, 981 A.2d 427 (2009).

[3] Albert P. Lenge, the executive director and general counsel of the commission, also is a defendant in this action.

[4] General Statutes § 9-709 provides: "(a) For purposes of this section, expenditures made to aid or promote the success of both a candidate for nomination or election to the office of Governor and a candidate for nomination or election to the office of Lieutenant Governor jointly, shall be considered expenditures made to aid or promote the success of a candidate for nomination or election to the office of Governor. The party-endorsed candidate for nomination or election to the office of Lieutenant Governor and the party-endorsed candidate for nomination or election to the office of Governor shall be deemed to be aiding or promoting the success of both

the defendants, Nancy Wyman, the state comptroller, and Denise L. Nappier, the state treasurer, from disbursing campaign funds to the joint committee and to the defendants Fedele 2010 and Boughton for CT 2010, pursuant to General Statutes §§ 9-705[5] and

candidates jointly upon the earliest of the following: (1) The primary, whether held for the office of Governor, the office of Lieutenant Governor, or both; (2) if no primary is held for the office of Governor or Lieutenant Governor, the fourteenth day following the close of the convention; or (3) a declaration by the party-endorsed candidates that they will campaign jointly. Any other candidate for nomination or election to the office of Lieutenant Governor shall be deemed to be aiding or promoting the success of such candidacy for the office of Lieutenant Governor and the success of a candidate for nomination or election to the office of Governor jointly upon a declaration by the candidates that they shall campaign jointly.

"(b) If a candidate for nomination or election to the office of Lieutenant Governor is campaigning jointly with a candidate for nomination or election to the office of Governor, the candidate committee and any exploratory committee for the candidate for the office of Lieutenant Governor shall be dissolved as of the applicable date set forth in subsection (a) of this section. Not later than fifteen days after said date, the campaign treasurer of the candidate committee formed to aid or promote the success of said candidate for nomination or election to the office of Lieutenant Governor shall file a statement with the proper authority under section 9-603, identifying all contributions received or expenditures made by the committee since the previous statement and the balance on hand or deficit, as the case may be. Not later than thirty days after the applicable date set forth in subsection (a) of this section, (1) the campaign treasurer of a qualified candidate committee formed to aid or promote the success of said candidate for nomination or election to the office of Lieutenant Governor shall distribute any surplus to the fund, and (2) the campaign treasurer of a nonqualified candidate committee formed to aid or promote the success of said candidate for nomination or election to the office of Lieutenant Governor shall distribute such surplus in accordance with the provisions of subsection (e) of section 9-608."

[5] General Statutes § 9-705 provides in relevant part: "(a) (1) The qualified candidate committee of a major party candidate for the office of Governor who has a primary for nomination to said office shall be eligible to receive a grant from the Citizens' Election Fund for the primary campaign in the amount of one million two hundred fifty thousand dollars, provided, in the case of a primary held in 2014, or thereafter, said amount shall be adjusted under subsection (d) of this section.

"(2) The qualified candidate committee of a candidate for the office of Governor who has been nominated, or who has qualified to appear on the election ballot in accordance with the provisions of subpart C of part III of chapter 153, shall be eligible to receive a grant from the fund for the general election campaign in the amount of three million dollars, provided in the case of an election held in 2014, or thereafter, said amount shall be adjusted under subsection (d) of this section. . . ."

9-713.[6] After an expedited hearing, this court rendered judgment in the form of a truncated opinion affirming

[6] General Statutes § 9-713 provides in relevant part: "(a) If the State Elections Enforcement Commission determines that contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made, by a nonparticipating candidate who is opposed by one or more participating candidates in a primary campaign or a general election campaign, which in the aggregate exceed one hundred per cent of the applicable expenditure limit for the applicable primary or general election campaign period, as defined in subdivision (1) of subsection (b) of section 9-712, the commission shall process a voucher not later than two business days after the commission's determination and the State Comptroller shall draw an order on the State Treasurer for payment, by electronic fund transfer directly into the campaign account of each such participating candidate, not later than three business days after receipt of an authorized voucher from the commission. . . . The amount of such additional moneys for each such participating candidate shall be twenty-five per cent of the applicable primary or general election grant. . . .

"(b) If the State Elections Enforcement Commission determines that contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made, by a nonparticipating candidate who is opposed by one or more participating candidates in a primary campaign or a general election campaign, which in the aggregate exceeds one hundred twenty-five per cent of the applicable expenditure limit for the applicable primary or general election campaign period, as defined in subdivision (1) of subsection (b) of section 9-712, the commission shall process a voucher not later than two business days after its determination and the State Comptroller shall draw an order on the State Treasurer for payment, by electronic fund transfer directly into the campaign account of each such participating candidate, not later than three business days after receipt of an authorized voucher from the commission. . . . The amount of such additional moneys for each such participating candidate shall be twenty-five per cent of the applicable primary or general election grant. . . .

"(c) If the State Elections Enforcement Commission determines that contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made, by a nonparticipating candidate who is opposed by one or more participating candidates in a primary campaign or a general election campaign, which in the aggregate exceeds one hundred fifty per cent of the applicable expenditure limit for the applicable primary or general election campaign period, as defined in subdivision (1) of subsection (b) of section 9-712, the commission shall process a voucher not later than two business days after its determination and the State Comptroller shall draw an order on the State Treasurer for payment, by electronic fund transfer directly into the campaign account of each such participating candidate, not later than three business days after receipt of an authorized voucher from the commission. . . . The amount of such additional moneys for each such participating candidate shall be twenty-five per cent of the applicable primary or general election grant. . . .

the ruling of the trial court. We indicated that a full opinion explaining our decision would be released at a later date. This is that opinion.

To provide context for our analysis of the plaintiffs' claims, we set forth at the outset an overview of the election program, which is administered by the commission and provides public financing for campaigns for certain state offices, including the offices of governor and lieutenant governor. General Statutes §§ 9-702 and 9-703. In exchange for this financing, participating candidates agree to limit their campaign spending to amounts specified in the election program. In addition, to qualify for financing under the election program, participating candidates must obtain a specified aggregate amount of "qualifying contributions"; General Statutes § 9-702 (b);[7] which consist of contributions from

"(d) If the State Elections Enforcement Commission determines that contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made, by a nonparticipating candidate who is opposed by one or more participating candidates in a primary campaign or a general election campaign, which in the aggregate exceeds one hundred seventy-five per cent of the applicable expenditure limit for the applicable primary or general election campaign period, as defined in subdivision (1) of subsection (b) of section 9-712, the commission shall process a voucher not later than two business days after its determination and the State Comptroller shall draw an order on the State Treasurer for payment, by electronic fund transfer directly into the campaign account of each such participating candidate, not later than three business days after receipt of an authorized voucher from the commission. . . . The amount of such additional moneys for each such participating candidate shall be twenty-five per cent of the applicable primary or general election grant. . . ."

[7] General Statutes § 9-702 provides in relevant part: "(a) There is established a Citizens' Election Program under which (1) the candidate committee of a major party candidate for nomination to the office of state senator or state representative in 2008, or thereafter, or the office of Governor, Lieutenant Governor, Attorney General, State Comptroller, Secretary of the State or State Treasurer in 2010, or thereafter, may receive a grant from the Citizens' Election Fund for the candidate's primary campaign for said nomination, and (2) the candidate committee of a candidate nominated by a major party, or the candidate committee of an eligible minor party candidate or an eligible petitioning party candidate, for election to the office of state senator or state representative at a special election held on or after December 31, 2006, or at a regular election held in 2008, or thereafter, or for election to the office of Governor, Attorney General, State Comptroller, Secretary of the State or State Treasurer in 2010, or thereafter, may receive a grant from the fund for the candidate's general election campaign for said office.

"(b) Any such candidate committee is eligible to receive such grants for a primary campaign, if applicable, and a general election campaign if (1)

qualified electors that cannot exceed $100, with the aggregate amount depending on the office for which the candidate is running. General Statutes § 9-704. Candidates for the office of governor must obtain qualifying contributions in the aggregate amount of $250,000.[8] General Statutes § 9-704 (a) (1).[9]

In addition to the initial grant of public funds, participating candidates receive supplemental matching grants when an opposing nonparticipating candidate

the candidate certifies as a participating candidate under section 9-703, (2) the candidate's candidate committee receives the required amount of qualifying contributions under section 9-704, (3) the candidate's candidate committee returns all contributions that do not meet the criteria for qualifying contributions under section 9-704, (4) the candidate agrees to limit the campaign expenditures of the candidate's candidate committee in accordance with the provisions of subsection (c) of this section, and (5) the candidate submits an application and the commission approves the application in accordance with the provisions of section 9-706. . . ."

[8] On June 16, 2010, in response to an inquiry from Fedele, the commission issued an opinion of counsel indicating that, pursuant to § 9-704 (a) (1) (A), it "would accept contributions given by the same contributor to each of the candidate committees *prior* to the committee for [l]ieutenant [g]overnor being absorbed in the committee for [g]overnor if the amount of those contributions exceed $100 (the maximum amount for a qualifying contribution) in the aggregate." (Emphasis in original.)

[9] General Statutes § 9-704 (a) provides in relevant part: "The amount of qualifying contributions that the candidate committee of a candidate shall be required to receive in order to be eligible for grants from the Citizens' Election Fund shall be:

"(1) In the case of a candidate for nomination or election to the office of Governor, contributions from individuals in the aggregate amount of two hundred fifty thousand dollars, of which two hundred twenty-five thousand dollars or more is contributed by individuals residing in the state. The provisions of this subdivision shall be subject to the following: (A) The candidate committee shall return the portion of any contribution or contributions from any individual, including said candidate, that exceeds one hundred dollars, and such excess portion shall not be considered in calculating such amounts, and (B) all contributions received by (i) an exploratory committee established by said candidate, or (ii) an exploratory committee or candidate committee of a candidate for the office of Lieutenant Governor who is deemed to be jointly campaigning with a candidate for nomination or election to the office of Governor under subsection (a) of section 9-709, which meet the criteria for qualifying contributions to candidate committees under this section shall be considered in calculating such amounts . . . ."

receives contributions, loans or other funds, or makes an expenditure, in excess of the expenditure limit for the particular office for the applicable primary campaign or general campaign period. General Statutes § 9-713. The supplemental grants are distributed in increments when the nonparticipating candidate receives contributions or makes expenditures exceeding 100 percent, 125 percent, 150 percent and 175 percent of the applicable expenditure limit.[10] General Statutes § 9-713 (a) through (d)

The election program also provides that a candidate for the office of lieutenant governor and a candidate for the office of governor are deemed to be campaigning jointly upon the occurrence of certain events.[11] General Statutes § 9-709. Under § 9-704 (a) (1) (B) (ii), "all contributions received by . . . [a] candidate committee of a candidate for the office of Lieutenant Governor who is deemed to be jointly campaigning with a candidate for nomination or election to the office of Governor under subsection (a) of section 9-709, which meet the criteria for qualifying contributions to candidate committees under this section shall be considered in calculating such amounts . . . ."

With this background in mind, we set forth the undisputed facts and procedural history. The Connecticut Republican Party (party) held its convention for the purpose of endorsing candidates for multiple statewide offices, including the office of governor, on May 21 and

---

[10] In response to an inquiry from Foley for Governor, Inc., the commission indicated that any contributions received or funds spent by a nonparticipating candidate's campaign committee before the start of the primary campaign period are considered in determining whether the candidate has exceeded the expenditure limit.

[11] On June 3, 2010, in response to an inquiry from Fedele, the commission issued an opinion of counsel stating that, under § 9-709, "[t]he ability of a candidate for [g]overnor and a candidate for [l]ieutenant [g]overnor to form a [j]oint [g]ubernatorial [c]ommittee is not affected by whether one or both was endorsed at the party convention."

22, 2010. The party endorsed Foley as its candidate for the office of governor and Mark D. Boughton as its candidate for the office of lieutenant governor. Foley for Governor, Inc., is Foley's campaign committee and Boughton for CT 2010 was Boughton's campaign committee. Michael C. Fedele and R. Nelson "Oz" Griebel garnered sufficient support at the convention to qualify to be placed on the ballot in the Republican primary election as candidates for the office of governor. Fedele 2010 was Fedele's campaign committee and Oz for Governor, Inc., is Griebel's campaign committee.

Both Fedele and Boughton elected to participate in the election program. On July 2, 2010, Fedele 2010 and Boughton for CT 2010 formed the joint committee pursuant to § 9-709 (a) and applied for public funding under the election program. As of July 1, 2010, Fedele 2010 had raised $228,232 in qualifying contributions. The commission approved the formation of the joint committee and its application for public financing on July 8, 2010. The joint committee qualified for public financing under the election program only because, pursuant to § 9-704 (a) (1) (B) (ii), the commission deemed contributions received by Boughton for CT 2010 to be qualifying contributions to the joint committee. A number of individuals who had contributed to Boughton for CT 2010 before the formation of the joint committee also had contributed to Fedele 2010. In several cases, the aggregate amount contributed by an individual contributor to both candidates exceeded $100. Without these dual contributions that, in the aggregate, exceeded $100, the joint committee would not have met the $250,000 threshold for qualifying contributions.

On July 9, 2010, the plaintiffs filed a verified complaint seeking a temporary and permanent injunction and a judgment declaring that § 9-704 (a) (1) does not permit consideration of multiple contributions by the same individual that, in the aggregate, exceed $100 in

determining whether a joint campaign committee formed under § 9-709 is eligible for public funds under the election program; that § 9-709 does not permit an endorsed candidate for lieutenant governor to form a joint campaign committee with a nonendorsed candidate for governor; and that § 9-713 does not permit the disbursement to a participating candidate of supplemental funds on the basis of contributions received or expenditures made by an opposing nonparticipating candidate prior to the beginning of the primary campaign period. The plaintiffs also sought a temporary and permanent injunction enjoining the commission from approving the formation of the joint committee, enjoining Wyman from drawing an order on Nappier for payment of election program funds to the joint committee, and enjoining Nappier from disbursing funds to the joint committee. After a hearing, the trial court denied the plaintiffs' request for a temporary injunction based on its determination that, in light of the court's interpretation of the relevant statutes, they were not likely to prevail on the merits of their claims. The plaintiffs then filed an application for certification to appeal from the trial court's interlocutory ruling pursuant to § 52-265a, which the Chief Justice granted. See footnote 2 of this opinion.

The plaintiffs claim on appeal that the trial court improperly concluded that: (1) an endorsed candidate for lieutenant governor may form a joint campaign committee with a nonendorsed candidate for governor under § 9-709 (a); (2) amounts contributed to the committee for a candidate for the office of lieutenant governor before the start of the primary campaign may be considered in determining whether a joint committee has met the qualifying threshold under § 9-704 (a) (1); (3) when a single individual has made dual contributions to the committee for the candidate for the office of lieutenant governor and to the committee for the

candidate for the office of governor that, in the aggregate, exceed $100, the amount in excess of $100 may be considered in determining whether a joint committee has reached the qualifying threshold of $250,000 for candidates for the office of governor under § 9-704 (a) (1); and (4) in determining whether a candidate participating in the election program is entitled to supplemental grants for a primary campaign pursuant to § 9-713 (a), contributions received by or expenditures made by the opposing nonparticipating candidate before the primary period has started may be considered. We reject each of these claims and direct the trial court to render judgment for the defendants.[12]

I

We first address the plaintiffs' claim that the trial court improperly determined that an endorsed candidate for the office of lieutenant governor may form a joint campaign committee with a nonendorsed candidate for the office of governor under § 9-709 (a). We disagree.

Like all of the issues on appeal, whether § 9-709 (a) authorizes an endorsed candidate for lieutenant governor to form a joint campaign committee with a nonendorsed candidate for governor is a question of statutory interpretation over which our review is plenary. See *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 316, 968 A.2d 396 (2009). "When construing

___

[12] The plaintiffs appealed from the trial court's denial of their request for a temporary injunction claiming that the court improperly had found that they had not established a likelihood of success on the merits of their claims. In their appellate briefs and at oral argument before this court, however, the plaintiffs conceded that, if this court were to agree as a matter of law with the trial court's interpretation of the relevant statutes, this court should affirm the trial court's ruling denying the request for a temporary injunction. The parties also agreed that, in that event, this court should not remand the case to the trial court for further proceedings on the plaintiffs' action for a declaratory judgment and request for a permanent injunction, but instead should direct judgment for the defendants.

a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

"It is well settled . . . that we do not defer to [an agency's] construction of a statute—a question of law—when . . . the [provisions] at issue previously ha[ve] not been subjected to judicial scrutiny or when the [agency's] interpretation has not been time tested." (Internal quotation marks omitted.) *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603, 893 A.2d 431 (2006). In the present case, § 9-709 has not previously been subject to judicial scrutiny and the commission's interpretation of the statute has not been time tested. Accordingly, we do not defer to the commission's interpretations. See footnotes 8, 10 and 11 of this opinion.

We begin our analysis with the language of the statute. Section 9-709 (a) provides: "For purposes of this section, expenditures made to aid or promote the suc-

cess of both a candidate for nomination or election to the office of Governor and a candidate for nomination or election to the office of Lieutenant Governor jointly, shall be considered expenditures made to aid or promote the success of a candidate for nomination or election to the office of Governor. The party-endorsed candidate for nomination or election to the office of Lieutenant Governor and the party-endorsed candidate for nomination or election to the office of Governor shall be deemed to be aiding or promoting the success of both candidates jointly upon the earliest of the following: (1) The primary, whether held for the office of Governor, the office of Lieutenant Governor, or both; (2) if no primary is held for the office of Governor or Lieutenant Governor, the fourteenth day following the close of the convention; or (3) a declaration by the party-endorsed candidates that they will campaign jointly. Any other candidate for nomination or election to the office of Lieutenant Governor shall be deemed to be aiding or promoting the success of such candidacy for the office of Lieutenant Governor and the success of a candidate for nomination or election to the office of Governor jointly upon a declaration by the candidates that they shall campaign jointly."

The plaintiffs contend that, because the second sentence of § 9-709 (a) refers specifically to "[t]he party-endorsed candidate for nomination or election to the office of Lieutenant Governor," the phrase "[a]ny *other* candidate for nomination or election to the office of Lieutenant Governor" in the third sentence of § 9-709 (a) must mean a nonendorsed candidate for the office of lieutenant governor. (Emphasis added.) They acknowledge, however, that the "candidate for nomination or election to the office of Governor" in § 9-709 (a) can be either the endorsed candidate or the nonendorsed candidate. Thus, they contend that § 9-709 (a) contemplates only three possible combinations of can-

didates: (1) two endorsed candidates; (2) a nonendorsed candidate for the office of lieutenant governor and a nonendorsed candidate for the office of governor; and (3) a nonendorsed candidate for the office of lieutenant governor and the endorsed candidate for the office of governor. They contend that the legislature prohibited the endorsed candidate for the office of lieutenant governor from forming a joint committee with the nonendorsed candidate for governor because it wanted "to discourage a party-endorsed candidate for lieutenant governor from undermining the party's will in endorsing its candidate for governor."

The parties make no claim that § 9-709 (a) is clear and unambiguous, and we conclude that it is not. Accordingly, in determining its meaning, we may "look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Sastrom* v. *Psychiatric Security Review Board*, supra, 291 Conn. 316.

We see no evidence that the legislative policy that § 9-709 (a) was designed to implement was to encourage or to discourage nonendorsed candidates for the office of lieutenant governor from choosing a particular running mate. If, as the plaintiffs argue, the legislature's intent was to discourage the endorsed candidate for the office of lieutenant governor from undermining the party's will by declining to run with the endorsed candidate for the office of governor, it is difficult to understand why it would authorize the endorsed candidate for the office of governor to undermine the party's will by declining to run with the endorsed candidate for lieutenant governor. Rather, the clear purpose of the statute, as reflected in its first sentence, is to limit the

expenditures of candidates for the offices of lieutenant governor and governor who are running on the same ticket to the amount that the candidate for the office of governor is authorized to spend under the election program. It is reasonable to conclude that the legislature imposed this limitation in recognition of the fact that candidates for the offices of governor and lieutenant governor appear together on the ballot in the general election and voters cast a single vote for both candidates. Conn. Const., art. IV, § 3; General Statutes § 9-181. Accordingly, campaign expenditures by one candidate in the campaign for general election effectively benefit both candidates.

With this purpose in mind, we conclude that the most reasonable interpretation of the phrase "[a]ny other candidate for nomination or election to the office of Lieutenant Governor" in the third sentence of § 9-709 (a) is that it means any candidate for the office of lieutenant governor other than an endorsed candidate who is running *jointly* with the endorsed candidate for the office of governor. In other words, the phrase includes a nonendorsed candidate for the office of lieutenant governor who is running jointly with a candidate for the office of governor, endorsed or not, *and* an endorsed candidate for the office of lieutenant governor who is running jointly with a nonendorsed candidate for the office of governor. If the legislature had intended the phrase to be limited to nonendorsed candidates for the office of lieutenant governor, it could have specifically used that phrase.

In addition, an interpretation of § 9-709 that treats candidates differently based on the candidate with whom they choose to run could render the statute constitutionally questionable under the equal protection provisions of the state and federal constitutions. "It is well established that this court has a duty to construe statutes, whenever possible, to avoid constitutional

infirmities . . . ." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 245, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). Accordingly, we conclude that the trial court properly determined that an endorsed candidate for the office of lieutenant governor is authorized to form a joint campaign committee with a nonendorsed candidate for the office of governor under § 9-709 (a).

## II

We next address the plaintiffs' claims related to § 9-704. Specifically, the plaintiffs claim that the trial court improperly rejected their contention that: (1) only qualifying contributions that are made to the candidate committee of a candidate for the office of lieutenant governor *after* the formation of a joint campaign committee may be considered in determining whether the joint committee has met the threshold qualifying amount; and (2) because contributions to the candidate committee of the candidate for the office of governor from a single individual that exceed $100 cannot be considered in determining whether the candidate has met the statutory qualifying threshold, when a single individual has contributed both to that candidate committee and to the candidate committee of a candidate for the office of lieutenant governor who is campaigning jointly with the candidate for governor, and the aggregate amount of the contributions exceeds $100, any amounts exceeding $100 cannot be considered. We disagree.

Section 9-704 (a) (1) provides that, to be eligible to receive grants under the election program, the candidate committee of a candidate for the office of governor must receive $250,000 in contributions from individuals. Under § 9-704 (a) (1) (A), when a contribution from an individual contributor to the committee of a candidate for the officer of governor exceeds $100, the excess

amount cannot be considered in determining whether the candidate has reached the qualifying threshold. Section 9-704 (a) (1) (B) (ii) provides that "all contributions received by . . . [a] candidate committee of a candidate for the office of Lieutenant Governor who is deemed to be jointly campaigning with a candidate for nomination or election to the office of Governor under subsection (a) of section 9-709, which meet the criteria for qualifying contributions to candidate committees under this section *shall be considered* in calculating such amounts . . . ." (Emphasis added.) Contributions from individuals to the candidate committee of the candidate for the lieutenant governor that do not exceed $100 are "qualifying contributions" under § 9-704 (a) (2).[13]

We reject the plaintiffs' claim that only qualifying contributions that are made to the candidate committee of a candidate for the office of lieutenant governor after the formation of a joint campaign committee may be considered in determining whether the joint committee has met the threshold qualifying amount because, under § 9-709 (b), the candidate committee of a candidate for the office of lieutenant governor is dissolved upon formation of a joint campaign committee and, therefore, it would be factually impossible for the candidate committee to receive contributions after that point. We will

---

[13] General Statutes § 9-704 (a) provides in relevant part: "The amount of qualifying contributions that the candidate committee of a candidate shall be required to receive in order to be eligible for grants from the Citizens' Election Fund shall be . . .

"(2) In the case of a candidate for nomination or election to the office of Lieutenant Governor . . . contributions from individuals in the aggregate amount of seventy-five thousand dollars, of which sixty-seven thousand five hundred dollars or more is contributed by individuals residing in the state. The provisions of this subdivision shall be subject to the following: (A) The candidate committee shall return the portion of any contribution or contributions from any individual, including said candidate, that exceeds one hundred dollars, and such excess portion shall not be considered in calculating such amounts . . . ."

not adopt an interpretation of § 9-704 (a) (1) (B) (ii) that would render it completely ineffectual. See *State v. Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." [Internal quotation marks omitted.]).

With respect to the plaintiffs' second claim, we must presume that the legislature was aware that individual donors might contribute to both the campaign committee of a candidate for the office of lieutenant governor and to the campaign committee of a candidate for the office of governor. If the legislature had intended to exclude the amount of such dual contributions exceeding $100 in determining whether the candidate for the office of governor has met the qualifying threshold, it could have said so expressly, and not in the cryptic manner claimed by the plaintiffs. Although we recognize that the statute is not a model of clarity, we conclude that the most reasonable interpretation of the language, "*all contributions received by . . . [the] candidate committee of a candidate for the office of Lieutenant Governor . . .* which meet the criteria for qualifying contributions to candidate committees under this section *shall be considered* in calculating such amounts";[14] (emphasis added) General Statutes § 9-704 (a) (1) (B) (ii); is that all contributions to the committee of the candidate for the office of lieutenant governor must be considered in determining whether the candidate for the office of governor has met the qualifying threshold of $250,000 if, at the time the contributions were received by the committee of the candidate for the office of lieutenant governor, they met the criteria

[14] It is clear that "such amounts" refers to the $250,000 total qualifying threshold and the $225,000 amount of that total that must come from persons who reside in this state.

for qualifying contributions to that candidate under § 9-704 (a) (2).[15]

The plaintiffs contend, however, that this interpretation undermines one of the goals of the election program, namely, to encourage candidates to obtain broad grassroots support. We recognize that the legislative history of the statute indicates that the legislature imposed high qualifying thresholds and low individual contribution limits for this purpose and for the purpose of reducing the drain on the citizens' election fund.[16] The legislature also evinced a desire, however, to encourage candidates to participate in the election program thereby limiting their expenditures and reducing their reliance on contributions from special interests.[17] In the

---

[15] At oral argument before this court, the plaintiffs argued that, because § 9-704 (a) (1) (B) (ii) refers to "the criteria for qualifying contributions to candidate committees under *this section*"; (emphasis added); and does not refer specifically to the criteria for qualifying contributions to candidate committees for the office of lieutenant governor set forth in § 9-704 (a) (2), the statute necessarily refers to the qualifying criteria of the joint committee set forth in § 9-704 (a) (1) (A). We disagree. At best, the phrase "this section" is ambiguous because it includes both § 9-704 (a) (1) (A) and (a) (2). Although the statute does not refer specifically to § 9-702 (a) (2), it also does not refer specifically to § 9-704 (a) (1) (A).

Contrary to the concurrence's assertion, our interpretation gives effect to § 9-704 (a) (1) (A) because the committee for the candidate for the office of governor must "return the portion of any contribution or contributions from any individual, including said candidate, that exceeds one hundred dollars" at the time the contribution *from that individual* is received.

[16] See 48 S. Proc., Pt. 21, 2005 Spec. Sess., p. 6408, remarks of Senator Donald J. DeFronzo (purpose of legislation is to encourage "greater reliance on grassroots politics"); id., p. 6428 (purpose of high qualifying threshold is to discourage frivolous candidacies and to reduce drain on public fund); id., p. 6640, remarks of Senator Thomas P. Gaffey (purpose of legislation was to require candidates "to solicit campaign contributions from the very people we represent"); id., pp. 6712–13, remarks of Senator Martin M. Looney (purpose of qualifying threshold was to enlarge role of small contributors).

[17] See 48 S. Proc., Pt. 21, 2005 Spec. Sess., p. 6376, remarks of Senator Donald J. DeFronzo (purpose of legislation is "to reduce the influence of special interest money on our electoral system"); id., pp. 6419–21, remarks of Senator David J. Cappiello (arguing that legislation did not go far enough to reduce influence of special interests); id., p. 6640, remarks of Senator Thomas P. Gaffey (purpose of legislation was to reduce influence of lobbyists and state contractors).

absence of any express statutory provision, we cannot conclude that, when these legislative policies are in competition, the former trumps the latter. Accordingly, we are not persuaded by this argument.

### III

Finally, we address the plaintiffs' claim that the trial court improperly decided that, in determining whether a candidate participating in the election program is entitled to supplemental grants for a primary campaign pursuant to § 9-713 (a) through (d), the commission may consider contributions received or expenditures made by an opposing nonparticipating candidate before the start of the primary campaign period.[18] The plaintiffs contend that, under the plain language of the statute, excess expenditures cannot be considered unless they are "for the applicable primary or general election campaign period . . . ." General Statutes § 9-713 (a). We disagree.

Section 9-713 (a) provides in relevant part: "If the State Elections Enforcement Commission determines that contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made, by a nonparticipating candidate who is opposed by one or more participating candidates in a primary campaign or a general election campaign, which in the aggregate exceed one hundred per cent

---

[18] Although the United States Court of Appeals for the Second Circuit has held that § 9-713 is unconstitutional; *Green Party of Connecticut* v. *Garfield*, 616 F.3d 213, 245 (2d Cir. 2010), all of the parties agree that this issue is not moot because neither that court nor, on remand, the United States District Court for the District of Connecticut, has enjoined the disbursement of supplemental grants pursuant to the statute. See *Foley* v. *State Elections Enforcement Commission*, United States District Court, Docket No. 3:10cv1091 (SRU) (D. Conn. July 16, 2010) ("the state's excess expenditure matching funds have been found to be unconstitutional, but, for the time being, the state may continue distributing excess expenditure matching funds under the [election program]").

of the *applicable expenditure limit for the applicable primary or general election campaign period,* as defined in subdivision (1) of subsection (b) of section 9-712, the commission shall process a voucher not later than two business days after the commission's determination and the State Comptroller shall draw an order on the State Treasurer for payment, by electronic fund transfer directly into the campaign account of each such participating candidate, not later than three business days after receipt of an authorized voucher from the commission. . . . . The amount of such additional moneys for each such participating candidate shall be twenty-five per cent of the applicable primary or general election grant. . . ."[19] (Emphasis added.) With respect to campaigns for the offices of governor and lieutenant governor, § 9-700 (11) defines " '[p]rimary campaign' " as "the period beginning on the day following the close of . . . a convention held pursuant to section 9-382 . . . and ending on the day of a primary held for the purpose of nominating a candidate for such office."

Thus, § 9-713 (a) provides that a participating candidate is entitled to supplemental grants when the following three conditions are met: (1) "contributions, loans or other funds have been received, or . . . an expenditure is made, or obligated to be made" by a nonparticipating candidate; (2) the "nonparticipating candidate . . . is opposed by one or more participating candidates in a primary campaign or a general election campaign"; and (3) the nonparticipating candidate's contributions and expenditures "in the aggregate exceed one hundred per cent of the *applicable expenditure limit for the applicable primary or general elec-*

---

[19] Subsections (b), (c) and (d) of § 9-713 set forth similar provisions governing supplemental payments when the nonparticipating candidate has received contributions or made expenditures exceeding, respectively, 125 percent, 150 percent and 175 percent of the applicable expenditure limit for the applicable campaign period. Because the relevant language in each provision is identical, we focus our attention on subsection (a).

*tion campaign period . . . .*" (Emphasis added.) The phrase "for the applicable primary or general election campaign period" clearly modifies the phrase "the applicable expenditure limit" in part (3) of § 9-713 (a), and not the phrase "contributions, loans or other funds have been received, or that an expenditure is made, or obligated to be made" in part (1) of § 9-713 (a).[20] See *State v. Rodriguez-Roman*, 297 Conn. 66, 98, 3 A.3d 783 (2010) (*Rogers, C. J.*, concurring) ("[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent . . . [which] is the last word, phrase, or clause that can be made . . . to apply to the provision or clause immediately preceding it" [internal quotation marks omitted]). The relevant statutes establish different expenditure limits for the primary campaign period and the general campaign period; see General Statutes § 9-705 (a) (1) and (2); and we construe § 9-713 (a) as simply requiring a determination of the applicable expenditure limit.

Moreover, when the legislature wants to specify the time period in which an action must be performed, it knows how to do so. See General Statutes § 9-702 (c) ("[a] candidate participating in the Citizens' Election Program shall limit the expenditures of the candidate's candidate committee [A] *before a primary campaign*

---

[20] The plaintiffs contend that, "[g]rammatically, 'which . . . exceed' is plural but 'campaign' is singular. Also grammatically, there is no comma between parts (1) and (2), but there is a comma between parts (2) and (3), so part (3) most naturally refers to all of parts (1) and (2), of which 'contributions . . . an expenditure' is the compound subject. More important, substantively, 'contributions . . . an expenditure' exceed limits; campaigns do not exceed limits." We agree that, as we have divided § 9-713 (a), the *entire phrase* "which in the aggregate exceed one hundred per cent of the applicable expenditure limit for the applicable primary or general election campaign period" modifies the reference to contributions and expenditures in part (1). That does not mean, however, that the *portion* of part (3) stating "for the applicable primary or general election campaign period," standing alone, modifies the reference to contributions and expenditures in part (1).

*and a general election campaign,* to the amount of qualifying contributions permitted in section 9-705 and any personal funds provided by the candidate under subsection [c] of section 9-710" [emphasis added]); see, e.g., *Genesky* v. *East Lyme,* 275 Conn. 246, 258, 881 A.2d 114 (2005) ("if the legislature wants to [engage in a certain action] it knows how to do so").

Finally, the plaintiffs' interpretation of § 9-713 (a) would be inconsistent with the evident purpose of the statute, which is to level the playing field between participating and nonparticipating candidates.[21] Under § 9-702 (c) (A), candidates who are participating in the election program must limit their expenditures before the convention "to the amount of qualifying contributions permitted in section 9-705[22] and any personal funds provided by the candidate under subsection (c) of section 9-710 . . . ." In the primary campaign, participating candidates must limit their expenditures to "(i) the amount of such qualifying contributions and personal funds that have not been spent before the primary campaign, (ii) the amount of the grant for the primary campaign authorized under section 9-705, and (iii) the amount of any additional moneys for the primary campaign authorized under section 9-713 or 9-714 . . . ." General Statutes § 9-702 (c) (B). Thus, the amounts spent by participating candidates before the convention are considered in determining whether a participating candidate has reached the overall expenditure limit for

---

[21] See 48 H.R. Proc., Pt. 37, 2005 Spec. Sess., p. 11,169, remarks of Representative Robert Farr (what "we're trying to do, is establish a level playing field without the corruptive influence we have under the current system of the special interest money"); id., p. 11,360, remarks of Representative Shawn T. Johnston (stating "the whole theory [of the proposed legislation] is to even the playing field").

[22] The reference in § 9-702 (c) (A) to § 9-705 appears to be a clerical error. Section 9-705 governs grants to candidates. Section 9-704 governs qualifying contributions.

the primary campaign set forth in § 9-702 (c) (B).[23] In light of the legislative intent to level the playing field, it is reasonable to conclude that, because a participating candidate cannot spend unlimited amounts before the convention, a nonparticipating candidate cannot spend unlimited amounts before the convention without taking the risk that the candidate's aggregate expenditures will trigger the supplemental grant provisions of § 9-713. We conclude, therefore, that, in determining whether a candidate who is participating in the election program is entitled to supplemental grants for a primary campaign pursuant to § 9-713 (a) through (d), the commission may consider contributions received or expenditures made by an opposing nonparticipating candidate before the primary period has started.

The ruling of the trial court is affirmed and the case is remanded to the trial court with direction to render judgment for the defendants.

In this opinion KATZ, PALMER and VERTEFEUILLE, Js., concurred.

GRUENDEL, J., concurring. I join the majority opinion affirming the denial of injunctive relief by the trial court and concur with my colleagues in all respects, save for their interpretation of General Statutes § 9-704 (a) (1). Because I believe that statute plainly and unambiguously limits qualifying contributions by an

---

[23] We therefore reject the plaintiffs' argument that the trial court's interpretation of § 9-713 (a) was incorrect because "[f]or the [legislature] to reallocate expenditures for the [period preceding the convention] to a primary campaign that may never have occurred makes no sense." With respect to participating candidates, the legislature clearly intended that expenditures made before the convention would be considered in determining whether a candidate has met the expenditure limit for the primary period, even though those candidates would have no way of knowing whether a primary would in fact occur. See General Statutes § 9-702 (c) (A) and (B). It is reasonable to conclude that the legislature intended that the expenditures of nonparticipating candidates would be treated in a parallel manner.

individual to $100, I write separately to express my disagreement with the interpretation espoused by the majority.

The factual recitation provided in the majority opinion accurately and amply details the dispute before us. I note for emphasis only the stipulated fact most salient to this concurrence: absent dual contributions made by the same contributors to the defendant campaigns of gubernatorial candidate Michael C. Fedele and lieutenant gubernatorial candidate Mark D. Boughton,[1] their joint campaign committee would not have met the $250,000 threshold for qualifying contributions under the Citizens' Election Program (election program), General Statutes § 9-700 et seq.

At issue is the proper construction of § 9-704 (a) (1). Section 9-704 is entitled "[q]ualifying contributions." Subsection (a) (1) pertains to candidacies for nomination or election to the office of governor. It provides: "The amount of qualifying contributions that the candidate committee of a candidate shall be required to receive in order to be eligible for grants from the Citizens' Election Fund shall be:

"(1) In the case of a candidate for nomination or election to the office of Governor, contributions from individuals in the aggregate amount of two hundred fifty thousand dollars, of which two hundred twenty-five thousand dollars or more is contributed by individuals residing in the state. The provisions of this subdivision shall be subject to the following: (A) The candidate committee shall return the portion of any contribution or contributions from any individual, including said can-

---

[1] In addition to the Fedele and Boughton campaigns, the defendants include: Fedele 2010 Joint Gubernatorial Campaign Committee, the joint campaign committee formed by Fedele and Boughton; the state elections enforcement commission; Albert P. Lenge, the executive director and general counsel of the state elections enforcement commission, state comptroller Nancy Wyman, and state treasurer Denise L. Nappier.

didate, that exceeds one hundred dollars, and such excess portion shall not be considered in calculating such amounts, and (B) all contributions received by (i) an exploratory committee established by said candidate, or (ii) an exploratory committee or candidate committee of a candidate for the office of Lieutenant Governor who is deemed to be jointly campaigning with a candidate for nomination or election to the office of Governor under subsection (a) of section 9-709, which meet the criteria for qualifying contributions to candidate committees under this section shall be considered in calculating such amounts . . . ." General Statutes § 9-704 (a) (1).

The proper application of § 9-704 (a) (1) presents an issue of statutory interpretation over which our review is plenary. *Regional School District No. 12* v. *Bridgewater*, 292 Conn. 784, 790, 974 A.2d 709 (2009). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) Id.

I thus begin my analysis with an examination of the text of § 9-704 (a) (1), which I submit is plain and unambiguous with respect to the question before us. The statute commences with the statement that "[t]he amount of qualifying contributions that the candidate committee of a candidate shall be required to receive in order to be eligible for grants from the Citizens' Election Fund shall be . . . ." General Statutes § 9-704 (a). The statute continues by expressly indicating that subdivision (1) pertains exclusively to "the case of a

candidate for nomination or election to the office of Governor . . . ." General Statutes § 9-704 (a) (1). Next is the provision requiring "contributions from individuals in the aggregate amount of two hundred fifty thousand dollars, of which two hundred twenty-five thousand dollars or more is contributed by individuals residing in the state." General Statutes § 9-704 (a) (1).

With that predicate set forth, § 9-704 (a) (1) proceeds to enumerate two qualifiers, stating that "[t]he provisions of this subdivision *shall* be subject to the following . . . ." (Emphasis added.) The first qualifier is the $100 proscription—"[t]he candidate committee shall return the portion of any contribution or contributions from any individual, including said candidate, that exceeds one hundred dollars, and such excess portion shall not be considered in calculating such amounts . . . ." General Statutes § 9-704 (a) (1) (A). The second qualifier provides that "all contributions received by (i) an exploratory committee established by said candidate, or (ii) an exploratory committee or candidate committee of a candidate for the office of Lieutenant Governor who is deemed to be jointly campaigning with a candidate for nomination or election to the office of Governor under subsection (a) of section 9-709, which meet the criteria for qualifying contributions to candidate committees under this section shall be considered in calculating such amounts . . . ." General Statutes § 9-704 (a) (1) (B).

Significantly, these are not competing or alternative criteria. The plain language of the statute contains the conjunction "and," diction most pertinent to the present analysis. Accordingly, the two qualifiers contained in § 9-704 (a) (1) must be read in tandem. In my view, the first plainly informs the second. As a result, whereas the majority concludes its analysis by emphasizing the lack of an "express statutory provision" in § 9-704 (a) (1) (B); see part II of the majority opinion; the very

sentence preceding that provision supplies that express statutory limitation. It is axiomatic that statutory provisions must in the first instance be considered in the context of their text and relationship to other statutes. *Regional School District No. 12* v. *Bridgewater*, supra, 292 Conn. 790. I fail to see how § 9-704 (a) (1) (B) properly can be interpreted independently from § 9-704 (a) (1) (A), particularly when the legislature in drafting the statute expressly has required that both qualifiers apply.

As I read § 9-704 (a) (1), which I am mindful pertains only to "the case of a candidate for nomination or election to the office of Governor," I understand it plainly to indicate that when a gubernatorial candidate forms a joint campaign committee with a lieutenant gubernatorial candidate pursuant to General Statutes § 9-709, all contributions received by those candidates may be considered for calculatory purposes of qualifying contributions, so long as they do not run afoul of the proscription of contributions by a single individual in excess of $100. Had the legislature intended to permit otherwise, the use of the conjunctive "and" makes little sense—"or" would better express that intent. In construing statutory language, "[n]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous." (Internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 528, 631 A.2d 1149 (1993); see also *Vibert* v. *Board of Education*, 260 Conn. 167, 176, 793 A.2d 1076 (2002) (every word in statute presumed to have meaning). In addition, this court "recently reaffirmed the significance" of the use of the conjunction " 'and' " in the General Statutes. *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 393, 985 A.2d 319 (2009), citing *State* v. *Bell*, 283 Conn. 748, 796, 931 A.2d 198 (2007). The use of that conjunc-

tion indicates that both conditions set forth in such a statute must be fulfilled. See *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 719 n.11, 949 A.2d 1189 (2008) (recognizing significance of conjunctive "and"); *Penn* v. *Irizarry*, 220 Conn. 682, 687, 600 A.2d 1024 (1991) ("use of the conjunctive 'and' indicates that both conditions must be fulfilled"); *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 455, 541 A.2d 1226 (1988) ("we find significance in the use of the word 'and' between the two stated conditions"). That the General Assembly deliberately inserted the conjunction "and" between the two qualifiers contained in § 9-704 (a) (1) (A) and (B) to me clearly evinces an intent to limit all qualifying contributions by an individual under § 9-704 (a) (1) to $100.

Moreover, to read § 9-704 in the manner advanced by the majority is to insert into subsection (a) (1) (B) a provision—namely, that an individual's qualifying contributions to a joint campaign committee are not confined to the $100 maximum—that is not expressly contained in the statute and that effectively nullifies the preceding proscription contained in subsection (a) (1) (A). Such a construction contravenes the maxim that "[w]hen construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible." (Internal quotation marks omitted.) *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 157, 602 A.2d 988 (1992). That construction is particularly troubling when, as outlined previously, it is possible to interpret the statute to apply all of its provisions harmoniously, and in a manner that does not yield an unworkable result. In light of the foregoing, I would conclude that the text of § 9-704 (a) (1) plainly and unambiguously provides that an individual's contributions to both gubernatorial candidate committees and joint campaign committees formed pursuant to § 9-709

is confined to the $100 maximum for purposes of calculating qualifying contributions.

Furthermore, notwithstanding the analytical confines of § 1-2z, in light of the majority's discussion of legislative history, I am compelled to note that such extratextual evidence substantiates my interpretation of § 9-704 (a) (1). As the majority acknowledges, the legislative history reflects that the qualifying contribution requirements were intended to foster a return to grassroots campaigning. See 48 S. Proc., Pt. 21, 2005 Spec. Sess., p. 6431, remarks of Senator Donald J. DeFronzo (legislation creates "incentive to grassroots operation and grassroots politics"); id., p. 6730, remarks of Senator Donald E. Williams (legislation requires return "to our roots" and working with constituents "at the local level"). Limiting qualifying contributions by a candidate's constituents to the amount of $100 was integral to this end. See 48 H. Proc., Pt. 37, 2005 Spec. Sess., pp. 11,349–50, remarks of Representative James Field Spallone (legislation "gets people out with their constituents into their districts at our level, asking for small donations so they can reach the threshold"); 48 S. Proc., supra, p. 6640, remarks of Senator Thomas P. Gaffey (legislation "requires each and every one of us who's going to be a participant in this process under this structure to solicit campaign contributions from the very people we represent"); 48 S. Proc., supra, p. 6396, remarks of Senator Mary Ann Handley ("major piece" of legislation "is to control the amounts of money which individuals and groups can put into an election campaign"); 48 S. Proc., supra, pp. 6712–13, remarks of Senator Martin M. Looney (qualifying contribution requirements are "particularly salutary element of the bill" that underscores "importance for our democracy in the setting of threshold requirements"). In addition, the qualifying contribution system was designed "to avoid the situation of engaging or encouraging frivolous

candidacies, and creating greater drains on the public fund." 48 S. Proc., supra, p. 6428, remarks of Senator DeFronzo.

Beyond those general propositions, the legislative history specifically addresses the question presented in this appeal as to whether the General Assembly, in enacting the election program, intended to limit all qualifying contributions by individual contributors to $100. A review of that extratextual evidence reveals that Senator DeFronzo, chairman of the government administration and elections committee, widely was recognized as the steward of this particular legislation, serving as both draftsman and foremost expert thereon.[2] On that day in November, 2005, when the legislation came up for a vote, Senator DeFronzo explained the election program to his colleagues from the floor of the Senate, stating in relevant part that "[q]ualifying contributions *are the same in all cases.*"[3] (Emphasis added.) Id., p. 6442. I respectfully submit that this informed explana-

_____

[2] See, e.g., 48 S. Proc., supra, p. 6503, remarks of Senator Andrew McDonald (thanking Senator DeFronzo for his work and leadership on legislation); id., p. 6637, remarks of Senator Gaffey (complimenting Senator DeFronzo's "wisdom of Solomon as he navigated through many of the issues that surround this bill"); id., p. 6709, remarks of Senator Looney (congratulating Senator DeFronzo "for his great patience and energy and determination and consensus-building skills in shaping this construct in an atmosphere where so little deference is paid to specialized expertise"); id., p. 6727, remarks of Senator Williams (applauding Senator DeFronzo's work as chairman of government administration and elections committee and "his intellectual firepower in terms of mastering these bills").

[3] Senator DeFronzo's explanation undermines the majority's contention that it "must presume that the legislature was aware that individual donors might contribute to both the campaign committee of a candidate for the office of lieutenant governor and to the campaign committee of a candidate for the office of governor" and that the legislature's silence in the face of that presumption validates its interpretation of § 9-704 (a) (1). See part II of the majority opinion. Furthermore, if the majority's presumption is accepted, then the senator's statement indicates his understanding that both gubernatorial candidate committees and joint campaign committees under § 9-704 (a) (1) would be subject to the same $100 individual contribution limitation.

tion cannot be reconciled with the analysis of § 9-704 (a) (1) set forth in the majority opinion.

Senator DeFronzo's statement that "[q]ualifying contributions are the same in all cases" is buttressed by testimony from members of the named defendant, the state elections enforcement commission (commission). On February 25, 2008, Jeffrey B. Garfield, executive director and general counsel of the commission, testified before the government administration and elections committee on House Bill No. 5505, entitled "An Act concerning the Citizens' Election Program." In response to a question from Senator Gayle Slossberg about nonqualifying contributions, Garfield detailed the type of contributions that are nonqualifying. He included in that list "[c]ontributions from political action committees, political party committees . . . [and] in-kind contributions" and then stated "*as well as contributions over $100.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Government Administration and Elections Committee, Pt. 2, 2008 Sess., pp. 589–90. Similarly, the committee heard testimony from Beth Rotman, the commission's director of public campaign financing for the election program, on § 9-704. Rotman testified that "to the best of a candidate's ability . . . you're actually supposed to return to the contributor anything that the campaign, to the best of its ability, believes is nonqualifying, so if there's lobbyists, contractors, political committees, *contributions in excess of $100, which is the limit for qualifying contribution.*" (Emphasis added.) Id., p. 590. Nowhere in the hundreds of pages of legislative history on the election program is there any discussion or indication that contributions to a joint campaign committee may exceed that limitation. The legislative history overwhelmingly indicates that the proscription of excess contributions by an individual to a "candidate for nomi-

nation or election to the office of Governor"—the only candidacy to which § 9-704 (a) (1) applies—governs both gubernatorial candidate committees and joint campaign committees formed pursuant to § 9-709. I submit that the legislative history not only speaks to the issue, but undermines the majority's interpretation of the statute. For that reason, I part ways with my colleagues on this issue.

Apart from my disagreement as to the proper construction of § 9-704 (a) (1), I concur with the majority's determination that the trial court did not abuse its discretion in denying the plaintiffs' request for injunctive relief. In weighing the pertinent factors; see *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 230 Conn. 441, 446, 645 A.2d 978 (1994); I would conclude that the balancing of the equities in the present case militated against the imposition of a temporary injunction. In particular, I emphasize that the record before us contains the sworn affidavit of Michael A. Totilo, treasurer of Fedele's gubernatorial campaign. In that affidavit, Totilo avers that the Fedele campaign has expended virtually all of the funds provided to it by the commission under the election program. I further am cognizant that General Statutes § 9-717 (b) ostensibly shields the Fedele campaign irrespective of whether it properly was entitled to those funds.[4] Indulging every reasonable presumption in favor of the correctness of the trial court's ruling as our standard of review requires; see, e.g., *Board of Selectmen* v. *Freedom of Information Commission,* 294 Conn. 438, 453, 984 A.2d

---

[4] General Statutes § 9-717 (b) provides: "Any candidate who has received any funds pursuant to the provisions of sections 1-100b, 9-700 to 9-716, inclusive, 9-750, 9-751 and 9-760 and section 49 of public act 05-5 of the October 25 special session prior to any such prohibition or limitation taking effect may retain and expend such funds in accordance with said sections unless prohibited from doing so by the court." That statute has not been the subject of judicial scrutiny and is not at issue in this appeal.

748 (2010); I thus would conclude that the court did not abuse its discretion in the present case.