ALVIN W. PENN v. RAPHAEL IRIZARRY ET AL.
(14385)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued October 31—decision released December 31, 1991[1]

---

[1] After hearing the arguments in this case and recessing to deliberate, this court announced from the bench its decision affirming the judgment of the trial court, but indicated that a full opinion would follow.

*Frederick D. Paoletti,* with whom, were *Paul C. Gusmano* and, on the brief, *Jerome Larracuente,* legal intern, for the appellant (plaintiff).

*R. Christopher Meyer,* assistant city attorney, with whom, on the brief, were *John H. Barton,* associate city attorney, and *John P. Bohannon,* assistant city attorney, for the appellees (defendant Thomas L. Kanasky et al.).

SHEA, J. The plaintiff, Alvin Penn, a candidate in a primary election to determine the Democratic party candidates for the board of aldermen in the 137th aldermanic district of the city of Bridgeport, brought this action pursuant to General Statutes § 9-329a[2] in order

[2] "[General Statutes] Sec. 9-329a. (Formerly Sec. 9-449). CONTESTS AND COMPLAINTS IN CONNECTION WITH ANY PRIMARY. Any elector or candidate aggrieved by a ruling of an election official in connection with any primary as provided in section 9-423, 9-424, 9-425 or 9-464 or who alleges that there has been a mistake in the count of the votes cast at such primary, or any candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the superior court for appropriate action. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the state elections enforcement commission. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the secretary of the state and the state elections enforcement commission. If such complaint is made subsequent to such primary it shall be brought, within ten days after such primary, to any judge of the superior court. Such judge shall forthwith order a hearing to be held upon such complaint upon a day not more than five nor less than three days after the making of such order, and shall cause notice of not less than three days to be given to any candidate or candidates in any way directly affected by the decision upon such hearing, to such election official, to the secretary of the state, the state elections enforcement commission and to any

to challenge the outcome of that election, in which he received two votes less than one of the declared winners, the named defendant, Raphael Irizarry. The basis for his challenge is the alleged misconduct of several election officials, who also have been made defendants,[3] in opening the polls twenty-five minutes later than the time prescribed, in permitting one of the defendants, Maria Rivera, to enter the voting booth while it was occupied by a voter and in failing to prevent other irregularities.

The trial judge found that some misconduct of election officials had occurred, but concluded that it did not affect the outcome of the primary. The principal issue

other person or persons, whom such judge deems proper parties thereto, of the time and place of the hearing upon such complaint. Such judge shall, on the day fixed for such hearing, and without delay, proceed to hear the parties and determine the result. If, after hearing, sufficient reason is shown, such judge may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, certify the result of his finding or decision to the secretary of the state before the tenth day following the conclusion of the hearing. Such judge may (1) determine the result of such primary; (2) order a change in the existing primary schedule; or (3) order a new primary if he finds that but for the error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, the result of such primary might have been different and he is unable to determine the result of such primary. The certification by the judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election official, to the correctness of such count, and, for the purposes of this section only, such alleged violations, and shall operate to correct any returns or certificates filed by the election officials, unless the same is appealed from as provided in section 9-325. In the event a new primary is held pursuant to such superior court order, the result of such new primary shall be final and conclusive unless a complaint is brought pursuant to this section. The clerk of the court shall forthwith transmit a copy of such findings and order to the secretary of the state."

[3] In addition to Raphael Irizarry, the challenged primary victor, and the other two primary candidates, the defendants include Maria Rivera, whose activities are the principal basis for the complaint, the town clerk, the head moderator and thirty other officials involved in the primary election.

raised on appeal involves the interpretation of a provision of § 9-329a that allows a judge to "order a new primary if he finds that but for . . . any violation of [General Statutes §§ 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365], the result of such primary *might have been different and he is unable to determine the result of such primary.*" (Emphasis added.) The plaintiff claims that the judge erroneously imposed upon him the burden of proving that the results of the primary "would have been different" rather than that they "might have been different."[4] We disagree with this interpretation of the memorandum of decision and affirm the judgment.

The parties do not challenge the facts found by the judge as set forth in the memorandum of decision. On September 11, 1991, a primary election was held in Bridgeport for selection of the two Democratic party candidates for the board of aldermen in the 137th aldermanic district. The two challengers, Samuel Baldwin and the defendant Irizarry, received 450 and 409 votes respectively, and they were declared the winners. The defeated candidates, the plaintiff and Lydia Martinez, both of whom had obtained the Democratic party endorsement, received 407 votes and 393 votes respectively. The plaintiff then brought this action contesting the two vote margin by which he had been defeated.

The principal misconduct claimed related to the activities of the defendant Rivera, a machine tender

---

[4] The memorandum of decision does not specify which of the statutory provisions referred to in General Statutes § 9-329a, a violation of which may warrant a new primary pursuant to the statute, might have been violated by Maria Rivera's activities. We agree with the defendants that the trial court's statement that Rivera "quite possibly" violated certain statutory provisions is not equivalent to a finding that any one of the statutes referred to in § 9-329a was violated. Like the trial court, however, we find it unnecessary to resolve these issues, because, even if such a violation had occurred, a new primary could not have been ordered unless the court had been unable to determine the result of the contested primary.

at the polls located in the Benjamin Franklin School. The judge found that on several occasions Rivera entered a polling booth while an elector was in the booth "and/or" put her hand and arm into the booth. Several Spanish speaking persons voted at this location and Rivera was aiding them in casting their votes. The judge had "no doubt that she was also showing them how to vote for the [challenge] slate as well," but concluded that the evidence did not establish that she had induced or influenced anyone to vote "contrary to that elector's intentions." The judge also concluded that Rivera had "violated in several respects the instructions for election officials promulgated by the Secretary of the State, and quite possibly certain provisions of Chapter 149 of the General Statutes, which could lead to the imposition of criminal penalties."

The judge found that the polls did not open at 6 a.m., as mandated, but approximately twenty-five minutes later. The plaintiff produced one witness who testified that she would have voted for him, but could not wait for the polls to open because of her employment, which also prevented her from returning to the polls later, since she was obliged to work overtime. If this person had been able to vote, the judge concluded, the plaintiff would have been defeated by only one vote "theoretically, but one could also surmise that other voters could not wait around either and would have voted for the two challengers."

The only other "irregularity" specifically mentioned by the judge was that the moderator and the "other poll tender left the polling place for an hour or so, which is also prohibited, but not significant in terms of the results." None of the misconduct relied upon persuaded the court that the results of the primary "would have been different." Declaring that "election results should be invalidated only with 'reluctance,' and where the will of the electorate cannot be ascertained," and referring

to *Wrinn* v. *Dunleavy,* 186 Conn. 125, 141–42, 440 A.2d 261 (1982),[5] the judge rendered judgment denying the plaintiff's claims for relief.

The plaintiff claims that the standard to be used in deciding upon the need for a new primary pursuant to § 9-329a is whether the result of the contested primary "might have been different," as the statute provides, rather than "would have been different," as articulated by the judge. He maintains that the use of "might" in the statute signifies that, if the result could possibly have been different, another primary must be ordered. He also contends that the facts found, especially those concerning Rivera's conduct, demonstrate the existence of such a possibility as a matter of law.

The difficulty with the plaintiff's argument is that it wholly ignores the second condition for ordering a primary pursuant to § 9-329a, which requires that the judge be "unable to determine the result" of the contested primary. The use of the conjunctive, "and," indicates that both conditions must be fulfilled before a new primary may be ordered. Even if the trial judge had

---

[5] The memorandum of decision referred to the following passage from *Wrinn* v. *Dunleavy,* 186 Conn. 125, 141–42, 440 A.2d 261 (1982): "This court acknowledges and concurs in the reluctance with which courts invalidate ballots, because such action effectively disfranchises the voters involved. Where the legislature in express terms says that a ballot shall be void for some cause, the courts must undoubtedly hold it to be void; but no voter is to be disfranchised on a doubtful construction, and statutes tending to limit the exercise of the ballot should be liberally construed in his favor. Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained. *Dombkowski* v. *Messier,* 164 Conn. 204, 207, 319 A.2d 373 (1972); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 77, 230 A.2d 36 (1967); *Scully* v. *Westport,* 145 Conn. 648, 651–52, 145 A.2d 742 (1958); *State* v. *Bossa,* 69 Conn. 335, 341, 37 A. 977 (1897). But the right to vote is not absolute and is subject to regulation by the legislature. *Mills* v. *Gaynor,* 136 Conn. 632, 636, 73 A.2d 823 (1950). See generally General Statutes, Title 9." (Internal quotation marks omitted.)

found that the result "might have been different," the plaintiff could not prevail unless the judge were also "unable to determine the result."

The plaintiff's claim with respect to the first condition, that "might" necessarily implies only a mere possibility of a different result, is undercut by the various gradations of meaning that lexicographers attribute to the word, which include "probability" as well as "possibility."[6] The ambiguity inherent in the use of "might" in the first condition cannot be allowed to obfuscate the relative clarity of the second condition, inability to determine the outcome of a primary election.

It is reasonably clear from the memorandum of decision that the judge concluded that he was able to determine the result of the contested primary, because he found that the various irregularities relied upon had not affected the outcome. The plaintiff has not challenged that factual finding except by pointing to the possibility of a different result. He has failed, therefore, to establish the second condition necessary for ordering a new primary.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[6] Webster's Third New International Dictionary defines "might," when used as a verb, as follows: *"past* of MAY—used in auxiliary function to express permission, liberty, probability, possibility in the past . . . or a present condition contrary to fact . . . or less probability or possibility than *may* . . . or as a polite alternative to *may* . . . or to *ought* or *should* . . . ." (Emphasis in original.)