******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Vertefeuille, Js.

*Syllabus*

Pursuant to statute (§ 9-329a [a]), "[a]ny (1) elector . . . aggrieved by a
ruling of an election official in connection with any primary . . . [or]
(2) elector . . . who alleges that there has been a mistake in the count
of the votes cast at such primary . . . may bring [a] complaint to . . .
the Superior Court for appropriate action."

Pursuant further to statute (§ 9-329 [b]), a court may order a new primary
if it finds that, "but for the error in the ruling of the election official,
[or] any mistake in the count of the votes . . . the result of [the primary
election] might have been different and [the court] is unable to determine
the result of such primary."

The plaintiffs, three electors in the 2019 Democratic primary election for
municipal office in the city of Bridgeport, brought an action pursuant
to § 9-329a (a), challenging the results of that election and seeking an
order directing a new primary election on the basis of, inter alia, various
alleged improprieties in the handling of absentee ballots. The plaintiffs
claimed that certain individuals associated with the defendants, who
are certain Bridgeport election officials and certain candidates for
elected office in the primary, had engaged in improper primary election
activity and violated certain state election laws by virtue of, inter alia, the
alleged misrepresentation of absentee voting eligibility and the improper
handling of absentee ballots. As a result of the alleged improprieties,
the plaintiffs claimed that they were aggrieved by the ruling of an election
official within the meaning of § 9-329a (a) (1) and that there had been
a mistake in the count of the votes within the meaning of § 9-329a (a)
(2). The defendants moved to dismiss the plaintiffs' complaint, claiming,
inter alia, that the plaintiffs lacked standing because they were not
personally aggrieved by the ruling of any election official. The trial court
granted the motion as to the claims brought under § 9-329a (a) (1),
concluding that the plaintiffs were not aggrieved by any of the claimed
election violations because they had not suffered a personal or individual
injury that was different from that suffered by any other elector eligible
to vote in the primary. The court, however, denied the motion to dismiss
as to the claims brought under § 9-329a (a) (2). Following an expedited
trial to the court, the court concluded that, although there were certain
irregularities in the handling of absentee ballots, the plaintiffs had not
established that a mistake in the count of the votes cast in the primary
election entitled them to an order directing a new primary pursuant to
§ 9-329 (b) because it was unable to determine the extent to which the
improper conduct had affected the primary as a whole. Accordingly,
the trial court rendered judgment for the defendants. Thereafter, the
plaintiffs requested that the trial court certify two questions of law to
this court for review pursuant to statute (§ 9-325), and, upon the trial
court's granting of the plaintiffs' request, the plaintiffs appealed to this
court. *Held*:

1. The plaintiffs' appeal challenging the result of the primary election, which
involved the selection of Democratic candidates for the general election,
was not moot, even though the general election had already occurred,
because this court could afford the plaintiffs practical relief by ordering
a new general election: if this court were to reverse the trial court's
judgment, invalidate the results of the primary election, and deem its
decision effective as of the time this appeal was heard, which was before
the general election occurred, then the results of the general election
necessarily would be invalid because the candidates selected in the
invalidated primary election would not have been validly elected candi-
dates for the general election; accordingly, this court concluded that
§ 9-329a (b), which does not place any time restrictions on when a court
may issue an order directing a new primary election, implicitly authorizes
a court to order a new general election if the earlier general election

was invalidated by operation of a court order invalidating the underlying primary election.

2. The trial court correctly determined that the plaintiffs lacked standing to bring their claims pursuant to § 9-329a (a) (1) and, accordingly, properly dismissed those claims: in order to have standing to bring a claim pursuant to § 9-329a (a) (1), a party must establish that he or she has a specific, personal and legal interest in the subject matter of the controversy, as opposed to a general interest that members of the community share; moreover, the plaintiffs failed to demonstrate that they had a specific, personal interest that was affected by the improprieties in the handling of absentee ballots, as the only harm they claimed to have suffered was that the primary election was unfair as a result of those improprieties, and an unfair election affects every voter and constitutes an injury to the general interest shared by all members of the community, which was insufficient to establish standing.

3. The plaintiffs could not prevail on their claim that the trial court applied an improper legal standard in determining that they had failed to establish that a mistake in the count of the votes cast in the primary election entitled them to an order directing a new primary election under § 9-329a (b): to be entitled to an order directing a new primary election under § 9-329a (b), a plaintiff must demonstrate that there were substantial violations of § 9-329a (a) and that, as a result of those violations, the reliability of the result of the election is seriously in doubt, and, when the trial court's memorandum of decision was read in its entirety, it was clear that the trial court properly understood and applied the correct standard; moreover, under that standard, the trial court correctly concluded that the plaintiffs had failed to establish that the reliability of the result of the primary election was seriously in doubt, the plaintiffs having failed to challenge any of the trial court's factual findings or legal conclusions as to which absentee ballots should have been counted, and having failed to present any evidence that there was a serious risk that any of the losing candidates in the primary election would have won in the absence of the alleged improprieties.

Argued November 4—officially released November 29, 2019*

*Procedural History*

Action seeking, inter alia, an order setting aside the results of the Democratic primary election held by the city of Bridgeport and directing a new special primary, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Stevens*, *J.*, granted in part the defendants' motion to dismiss; thereafter, the case was tried to the court; judgment for the defendants and certifying the results of the primary election, from which the plaintiffs appealed to this court. *Affirmed*.

*Prerna Rao*, for the appellants (plaintiffs).

*James J. Healy*, with whom were *John P. Bohannon*, *Jr.*, deputy city attorney, and *John F. Droney*, *Jr.*, for the appellees (defendants).

*Opinion*

ROBINSON, C. J. This appeal, which comes before this court pursuant to the expedited review procedure provided by General Statutes § 9-325, involves a claim that certain improprieties in the handling of absentee ballots for the 2019 Democratic primary election for municipal office (primary election) in the city of Bridgeport (city) rendered the result so unreliable that it must be set aside. The plaintiffs, Beth Lazar, Annette Goodridge and Vanessa Liles, who are registered Democrats residing in the city, brought this action against the defendants[1] pursuant to subdivisions (1) and (2) of General Statutes § 9-329a (a).[2] The plaintiffs alleged that extensive absentee ballot abuse and other improprieties leading up to the primary election rendered its result unreliable. Accordingly, they asked the trial court to set aside the results and to order a new, special primary election for all candidates pursuant to § 9-329a (b). The defendants moved to dismiss the action for lack of aggrievement. The trial court granted the motion to dismiss with respect to the plaintiff's claims brought pursuant to subdivision (1) of § 9-329a (a) but denied the motion with respect to the claims brought pursuant to subdivision (2). After a trial to the court, the court concluded that the plaintiff had failed to establish that the result of the primary election might have been different but for the alleged improprieties and rendered judgment for the defendants. The plaintiffs then requested that the trial court certify the following two questions to this court pursuant to § 9-325: (1) "Did the trial court err in finding that no plaintiff . . . has standing to challenge the [primary] election results under § 9-329a (a) (1) . . . ?" And (2) "Did the trial court apply the wrong legal standard when declining to order a new primary?" Upon the trial court's grant of their request, the plaintiffs filed this appeal. In their brief to this court, the plaintiffs raised the additional issue of whether this court is able to grant any relief to the plaintiffs or, instead, the appeal is moot in light of its timing, which implicates this court's subject matter jurisdiction. We conclude that the appeal is not moot. We further conclude that the trial court correctly determined that the plaintiffs lacked standing to invoke § 9-329a (a) (1) because they were not aggrieved and that the plaintiffs failed to establish that they were entitled to an order directing a new primary election under § 9-329a (a) (2). Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts, which were found by the trial court or are undisputed, and procedural history. The primary election took place on September 10, 2019. The mayoral candidates were Joseph P. Ganim and Marilyn Moore. There were 4337 walk-in ballots cast for Ganim and 4721 for Moore. In addition, 967 absentee ballots were cast for Ganim and 313 for Moore. Thus, Ganim won the election with 5304 votes,

as against 5034 votes for Moore, by a margin of 270 votes.

Thereafter, the plaintiffs, who voted in the primary election, brought this action pursuant to § 9-329a, alleging that certain individuals associated with the defendants or the city's Democratic Town Committee engaged in improper primary election activity, including the misrepresentation of absentee voting eligibility in violation of General Statutes § 9-135, the improper handling of absentee ballots in violation of General Statutes § 9-140b, attempts to influence the speech of any person in a primary in violation of General Statutes § 9-364a, and improprieties in the application and distribution process for absentee ballots in violation of General Statutes § 9-140. The plaintiffs claimed that, as the result of these allegedly improper activities, they were aggrieved by the ruling of an election official within the meaning of § 9-329a (a) (1) and that there had been a mistake in the count of the votes within the meaning of § 9-329a (a) (2). They sought a court order setting aside the result of the primary election, directing a new Democratic primary election for all candidates and requiring supervised voting in locations where a disproportionately large percentage of voters use absentee ballots.

The defendants moved to dismiss the complaint on the ground that the plaintiffs were not personally aggrieved by the ruling of any election official for purposes of § 9-329a (a) (1). In their opposition to the motion to dismiss, the plaintiffs contended that they did not have to establish that they were classically aggrieved, that is, that they had (1) "demonstrate[d] a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole," and (2) "establish[ed] that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 539, 833 A.2d 883 (2003). Rather, they claimed that they were required to establish only that they had statutory standing, which "concerns the question [of] whether the interest sought to be protected by the complainant[s] is arguably within the zone of interests to be protected or regulated by the statute . . . ." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 393, 941 A.2d 868 (2008). The plaintiffs also argued that § 9-329a (a) (2) required them to allege only that there had been a mistake in the count of the vote.

The trial court concluded that the plaintiffs were not aggrieved for purposes of § 9-329a (a) (1) because they had not "suffered a personal or individual injury that was different from any other elector eligible to vote in

the primary." Accordingly, the court granted the motion to dismiss the plaintiffs' claims pursuant to subdivision (1) of § 9-329a (a). The trial court also concluded, however, that the plaintiffs were not required to establish that they were personally aggrieved under § 9-329a (a) (2) but only that there had been a mistake in the count of the vote. In addition, the court concluded that subdivision (2) was broad enough to encompass not only a mechanical miscount but a mistake arising from the counting of votes that legally should not be counted, such as absentee ballots cast by voters who were not eligible to cast them. Accordingly, the court denied the motion to dismiss the claims pursuant to subdivision (2).

The trial court conducted a trial over the course of two weeks, during which the plaintiff presented the following evidence: testimony by five witnesses that they had been solicited to submit absentee ballots, even though they did not satisfy the criteria for doing so under § 9-135; testimony by six witnesses that their completed absentee ballots were taken from them by canvassers associated with political campaigns, rather than mailed, in violation of § 9-140b (a); evidence that electors had filed multiple absentee ballot applications, some of which were missing signatures or were otherwise questionable; evidence that the absentee ballot moderator had violated procedures intended to protect ballot secrecy; evidence that the town clerk had modified the addresses on multiple absentee ballot applications in violation of § 9-140 (g); evidence that certain campaign workers had been paid exclusively to distribute absentee ballot applications in violation of § 9-140 (j); and evidence that numerous individuals had received applications for absentee ballots for distribution and failed to return a list to the town clerk's office identifying the electors to whom they gave the applications in violation of § 9-140 (k) (2). The trial court acknowledged that the conduct of the individuals who were paid exclusively to distribute absentee ballots and those who failed to return a list to the town clerk's office identifying the electors to whom they had distributed applications was "illegal and disturbing," an observation that, in our view, was warranted in light of the history of improper handling of absentee ballots in the city. See, e.g., *Keeley* v. *Ayala*, 328 Conn. 393, 427–28, 179 A.3d 1249 (2018) (trial court correctly determined that new special primary was required as result of improper handling of absentee ballots). The court was unable to determine, however, "the extent to which such conduct may have affected the primary as a whole." Accordingly, the trial court found that the plaintiffs had failed to establish that, "but for the . . . mistake in the count of the votes . . . the result of [the primary election] might have been different . . . ." General Statutes § 9-329a (b). The court therefore rendered judgment in favor of the defendants.

This expedited appeal pursuant to § 9-325 followed. The appeal was filed on Friday, November 1, 2019, and we ordered an expedited hearing of the appeal, which took place on Monday, November 4, 2019, the day before the general election was held. The plaintiffs claim on appeal that the trial court incorrectly determined that they lacked standing to bring a claim pursuant to § 9-329a (a) (1) and that it applied an improper legal standard in determining that the plaintiffs had failed to establish that they were entitled to an order directing a new primary election. The plaintiffs also contend that the appeal was justiciable at the time that it was filed because this court could order relief, namely, a new primary before the general election occurred. They further contend that, even if the general election were to occur before this court could decide the appeal, and even if that event rendered moot their claim that the trial court applied an incorrect legal standard when it denied their request for an order directing a new election because no relief could be granted, we still could address their standing claim under the capable of repetition, yet evading review exception to the mootness doctrine. In response, the defendants dispute the plaintiffs' claims challenging the rulings of the trial court, and they do not address the justiciability issue.

We conclude that the appeal is not moot because a new general election could be held if this court concludes that the trial court improperly denied the plaintiffs' request for an order directing a new primary election. We further conclude that the trial court correctly determined that the plaintiffs did not have standing to assert a claim pursuant to § 9-329a (a) (1) and that the plaintiffs had not established that they were entitled to a new primary election.

I

Because it implicates this court's subject matter jurisdiction, we first address the plaintiff's claim that this appeal is justiciable. As we indicated, the plaintiffs contended in their brief to this court that this appeal was not moot *at the time that it was filed* because this court could order a new primary election *before* the general election occurred. Neither party has addressed the issue of whether this court can void a general election that has already occurred and order a new one after invalidating the primary election at which the candidates for the general election were chosen. Nevertheless, because the issue implicates this court's jurisdiction, we address it.

This court has never directly addressed the issue of whether a primary election contest becomes moot after the general election has taken place. Cf. *Caruso* v. *Bridgeport*, 285 Conn. 618, 624–25 n.5, 941 A.2d 266 (2008) (*Caruso II*) (declining to address issue of whether this court has authority "to overturn a general

election and order a new one based on the voiding of a primary election" at which candidates were chosen). We held in *Caruso* v. *Bridgeport*, 284 Conn. 793, 804, 937 A.2d 1 (2007) (*Caruso I*), however, that the courts have no authority to order a *postponement* of a general election in an action brought pursuant to § 9-329a. In *Caruso I*, the plaintiff brought a certified appeal to this court pursuant to § 9-325, challenging the trial court's ruling in an action brought pursuant to § 9-329a denying his motion to postpone the general election pending the resolution of a separate appeal from other rulings by the trial court. Id., 795–97. We held that "§ 9-329a does not authorize the courts under any circumstances to order the postponement of a general election in an action brought pursuant to that statute" because "the judge may go no further in extending relief than that outlined in the statute"; id., 804; and, in a proceeding pursuant to § 9-329a (a), the statute authorizes the judge only to "[1] determine the result of such primary; [2] order a change in the existing primary schedule; or [3] order a new primary." (Internal quotation marks omitted.) Id.

It does not follow, however, from the fact that a general election must go forward while a challenge to the primary election at which the candidates were selected is pending—thereby preserving the special "snapshot" character[3] of the election in the event that the challenge is unsuccessful—that the courts cannot order a new general election if the plaintiff prevails in his challenge to the validity of the primary election after the general election has taken place. If the invalidation of the primary results were given nunc pro tunc effect— that is, if this court reversed the trial court and that decision was deemed to be effective as of the time that the appeal was heard before the general election—that necessarily would mean that the candidates for office who ran in the primary were not validly elected candidates for the general election.[4] Thus, with respect to those candidates, the general election also would have been treated as invalid as a matter of pure logic. A valid general election could not be held without first holding a valid primary election to select the candidates. We conclude, therefore, that the provision of § 9-329a (b) authorizing the court to order a new primary election if it finds that the result of the primary might have been different but for the improprieties complained of, without any limits on the timing of such an order, implicitly authorizes the judge to order a new general election if the first general election is invalidated by operation of the judge's order invalidating the primary election. Because this court could provide this form of relief, we conclude that this appeal is not moot.

## II

We next address the plaintiffs' claim that the trial court incorrectly determined that they lacked standing

to bring a claim pursuant to § 9-329a (a) (1). "As a preliminary matter, we address the appropriate standard of review. If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Id., 802–803.

"The fundamental aspect of [statutory] standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff

has a legally protected interest that the defendant's action has invaded. . . . The concepts of standing and legal interest are to be distinguished. The legal interest test goes to the merits, whereas standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Citations omitted; internal quotation marks omitted.) *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 491–92, 400 A.2d 726 (1978).

In the present case, the plaintiffs contend that the trial court incorrectly determined that, to have standing to bring a claim pursuant to § 9-329a (a) (1), which authorizes "[a]ny . . . elector . . . aggrieved by a ruling of an election official" to bring an action pursuant to the statute, they had to show that they had "a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 282 Conn. 803. Rather, the plaintiffs contend, they were required to show only that "the interest sought to be protected by [them] is arguably within the zone of interests to be protected or regulated by the statute . . . in question." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 393–94.

The plaintiffs have cited no authority, however, for the proposition that, *whenever* the legislature enacts a statute protecting a specific zone of interests, *any person* who is a member of the class of persons who are statutorily authorized to invoke the statute may bring an action to protect that zone of interests. Although the legislature has, on occasion, dispensed with the requirement that a plaintiff establish the elements of classical aggrievement in order to have standing to invoke a statute by conferring presumptive or automatic standing on a particular class of persons; see, e.g., *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 201, 676 A.2d 831 (1996) (under General Statutes § 8-8 [a], landowners living within 100 foot radius of land involved in zoning decision have presumptive standing to appeal from decision); id. (taxpayers have automatic standing to appeal from zoning decisions involving sale of liquor under § 8-8 [a]); proof of a specific, personal and legal interest that has been injured by the defendant's conduct ordinarily is required to establish statutory standing. See id., 203 (taxpayers do not have automatic standing under § 8-8 [a] to appeal from zoning decisions involving "dangerous businesses, such as adult video and bookstores, adult entertainment clubs, X-rated movie theaters, massage parlors, pool halls, gun dealers, pawn shops, and all-night convenience stores," but must establish aggrievement); see also *Tremont*

*Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 711, 217 A.3d 953 (2019) ("to have standing to bring an antitrust action [pursuant to General Statutes § 35-24 et seq.], a plaintiff must adequately allege not only that it is a member of the class of persons that is statutorily authorized to bring such an action, but also that [1] it suffered an antitrust injury and [2] it is an acceptable plaintiff to pursue the alleged antitrust violations" [internal quotation marks omitted]); *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 527, 119 A.3d 541 (2015) (to have standing to appeal from zoning decision pursuant to § 8-8, "a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal" [internal quotation marks omitted]); *Schwartz* v. *Town Plan & Zoning Commission*, 168 Conn. 20, 25, 357 A.2d 495 (1975) (under § 8-8, "[e]xcept in cases involving the sale of alcoholic beverages, aggrievement requires a showing that the plaintiffs have a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of the community as a whole, and that the plaintiffs were specially and injuriously affected in their property or other legal rights"); *McDermott* v. *Zoning Board of Appeals*, 150 Conn. 510, 513, 191 A.2d 551 (1963) ("[a] person is aggrieved within the meaning of [General Statutes] § 14-324 [which allows aggrieved persons to appeal from decisions involving licensing for the sale of gasoline] if he has a personal or property interest which will be substantially and adversely affected by a finding of the board that the location is suitable and that its use for a gasoline station will not imperil the safety of the public").

Nevertheless, the plaintiffs contend that the legislature must have intended that all electors, or at least the class of electors that is entitled to vote in a particular election, would have standing to bring a claim pursuant to § 9-329a (a) (1), even if the elector did not have a specific personal interest that was substantially affected by the improper ruling because, otherwise, an elector could bring an action pursuant to the statute only "if the margin of victory was one or on a tie vote." This is so, according to the plaintiffs, because the improper ruling "would not make a difference in the outcome" if the margin were larger. See General Statutes § 9-329a (b) ("judge may . . . order a new primary if he finds that but for the error in the ruling of the election official, [or] any mistake in the count of the votes . . . the result of such primary might have been different"). We note, however, that § 9-329a (b) also authorizes the judge to "determine the result of such primary . . . ." Accordingly, if an elector were improperly denied his right to vote, the elector would have standing to bring an action pursuant to § 9-329a (a) (1) and could ask the court to correct the results to include

his vote. Moreover, we find it unlikely that the legislature intended to create the situation in which, after every primary election, thousands of potential plaintiffs would have standing to seek a new primary based on the rulings of an election official that did not personally affect them. It is more likely that the legislature intended that the proper party to seek that particular form of relief would be a losing *candidate* who could establish that the improper ruling of an election official had rendered the results unreliable.

The plaintiffs also contend that this court previously has held that § 9-329a (a) (1) should be interpreted broadly. In *Caruso II*, this court reviewed the legislative history and genealogy of § 9-329a (a) (1) and concluded that, "although statutes governing election contests generally are construed strictly, nothing in the language, genealogy or legislative history of § 9-329a (a) suggests that the legislature intended for the phrase 'ruling of an election official' to have a narrow, technical meaning. Cf. *Bortner* v. *Woodbridge*, [250 Conn. 241, 267, 736 A.2d 104 (1999)] (nothing in legislative history of [General Statutes] § 9-328 gives 'any indication that it was intended to have some specialized meaning'). Indeed, it appears that the legislature considered an improper action to be a type of ruling." *Caruso II*, supra, 285 Conn. 646.

We disagree with the plaintiffs' reliance on *Caruso II*. In that case, there was no claim that the plaintiff, who was the losing mayoral candidate, did not have a specific personal interest in the outcome of the election that had been affected by the conduct at issue. Rather, the only issue that was before this court was whether the conduct complained of constituted a ruling of an election official. See id., 644 (defendants claimed that "the trial court improperly had determined that the alleged conduct constituted rulings by an election official"). Thus, it does not follow from our conclusion in *Caruso II* that the legislature intended that *that particular phrase* should be interpreted broadly such that the legislature intended to eliminate the requirement that plaintiffs establish that they have a specific personal interest that was affected by the conduct at issue. In other words, lack of standing under § 9-329a (a) (1) can be found *either* when the plaintiff was not "aggrieved" because he did not have a specific personal interest that was affected by the conduct at issue *or* when the plaintiff may have had a specific personal interest that was affected by the conduct complained of but the claim is not within the zone of interests that the statute was intended to protect because the conduct did not constitute a ruling of an election official. Only the latter issue was before this court in *Caruso II*.

The plaintiffs also rely on this court's decision in *Bauer* v. *Souto*, 277 Conn. 829, 896 A.2d 90 (2006), to support their contention that a plaintiff bringing a claim

pursuant to § 9-329a (a) (1) is not required to establish a specific personal interest that was substantially affected by the ruling of an election official. In *Bauer*, the plaintiff, David P. Bauer, who was a losing candidate for the common council of the city of Middletown, brought an action pursuant to § 9-328, challenging the results of the election. Id., 830–33. All of the candidates for the common council, which consisted of twelve members, ran at large. Id., 834. Bauer received the thirteenth highest number of votes. Id. After finding that one of the voting machines used in the election had malfunctioned, resulting in an undercount of the votes for Bauer, the trial court ordered a new election in the district where the malfunctioning machine had been located, with all of the candidates participating. Id., 836–37. On appeal, this court agreed that a new election was required but concluded that the relief should be a new citywide election with all candidates participating. Id., 843. The plaintiff in the present case contends that *Bauer* shows that a plaintiff in an election contest can raise claims that are outside the scope of his or her specific personal interest.

We disagree. This court's conclusion in *Bauer* that a new citywide election with all candidates participating was required was not driven by the determination that the plaintiff could raise claims on behalf of the other candidates or electors but by the determination that the best way to remedy the undercount of the votes cast for Bauer, a common council candidate, was to conduct an election that would approximate as closely as possible the at-large conditions of the invalidated election. See id., 843–44. In any event, it appears that Bauer claimed that there had been a mistake in the count of the vote, not that he was aggrieved by the ruling of an election official. See id., 836–37 (trial court found that, as result of malfunctioning machine, "all those who voted for [the plaintiff] in district eleven did not have their vote[s] counted" [internal quotation marks omitted]). Under § 9-328, as under § 9-329a (a) (2), there is no requirement that a plaintiff establish aggrievement before the court may entertain a claim that there has been a mistake in the count of the votes. See General Statutes § 9-328 ("any elector or candidate claiming that there has been a mistake in the count of votes cast" may bring complaint pursuant to statute). Thus, *Bauer* does not support the plaintiffs' position here. Accordingly, we conclude that, to have standing to bring a claim pursuant to § 9-329a (a) (1), the plaintiff must establish that he or she has "a specific, personal and legal interest in the subject matter of the [controversy] . . . ." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 282 Conn. 803.

The plaintiffs have made no claim that, if they are required to establish that they had a specific personal interest that was affected by the improprieties in the

handling of the absentee ballots, they are able to do so. The only harm that the plaintiffs have claimed is that the election was unfair as a result of the improprieties, and an unfair election affects every voter. Although we are not unsympathetic to the desire to ensure the fairness of the city's election, particularly given that this is not the first time that there have been challenges to the handling of absentee ballots in the city, it is well established that a claim of injury to "a general interest that all members of the community share" is not sufficient to establish standing. (Internal quotation marks omitted.) Id.; see also *Crist* v. *Commission on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001) ("a voter fails to present an [injury in fact] when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate"); *Kauffman* v. *Osser*, 441 Pa. 150, 156, 271 A.2d 236 (1970) (electors did not have standing to challenge validity of statutes governing absentee ballots on ground that statutes operated to dilute their votes because "a person whose interest is common to that of the public generally, in contradistinction to an interest peculiar to himself, lacks standing to attack the validity of a legislative enactment"). But see *Committee for an Effective Judiciary* v. *State*, 209 Mont. 105, 112, 679 P.2d 1223 (1984) (voters had standing to challenge constitutionality of statutes requiring district court judge or Supreme Court justice to resign from office before running for another elective judicial office because electorate was intended to be beneficiary of state constitutional provision allowing judge to run for another judicial office without first resigning). Accordingly, we conclude that the trial court correctly determined that the plaintiffs lacked standing to bring a claim pursuant to § 9-329a (a) (1) because they had no specific personal interest that was affected by the improprieties complained of.[5]

### III

Finally, we address the plaintiffs' contention that the trial court applied an improper legal standard when it determined that the plaintiffs had not established that a mistake in the count of the votes cast in the primary election entitled them to an order directing a new primary election. We disagree.

We begin with a review of the general principles governing our review of election contests. "We previously have recognized that, under our democratic form of government, an election is the paradigm of the democratic process designed to ascertain and implement the will of the people. . . . [E]lection laws . . . generally vest the primary responsibility for ascertaining [the] intent and will [of the voters] on the election officials . . . ." (Citation omitted; internal quotation marks omitted.) *Caruso II*, supra, 285 Conn. 637.

When considering whether to order a new election, the court must engage in a "sensitive balance among

three powerful interests, all of which are integral to our notion of democracy, but which in a challenged election may pull in different directions. One such interest is that each elector who properly cast his or her vote in the election is entitled to have that vote counted. Correspondingly, the candidate for whom that vote properly was cast has a legitimate and powerful interest in having that vote properly recorded in his or her favor. When an election is challenged on the basis that particular electors' votes for a particular candidate were not properly credited to him, these two interests pull in the direction of ordering a new election. The third such interest, however, is that of the rest of the electorate who voted at a challenged election, and arises from the nature of an election in our democratic society, as we explain in the discussion that follows. That interest ordinarily will pull in the direction of letting the election results stand.

"An election is essentially—and necessarily—a snapshot. It is preceded by a particular election campaign, for a particular period of time, which culminates on a particular date, namely, the officially designated election day. In that campaign, the various parties and candidates presumably concentrate their resources—financial, political and personal—on producing a victory on that date. When that date comes, the election records the votes of those electors, and only those electors, who were available to and took the opportunity to vote—whether by machine lever, write-in or absentee ballot—on that particular day. Those electors, moreover, ordinarily are motivated by a complex combination of personal and political factors that may result in particular combinations of votes for the various candidates who are running for the various offices.

"The snapshot captures, therefore, only the results of the election conducted on the officially designated election day. It reflects the will of the people as recorded on that particular day, after that particular campaign, and as expressed by the electors who voted on that day. Those results, however, although in fact reflecting the will of the people as expressed on that day and no other, under our democratic electoral system operate nonetheless to vest power in the elected candidates for the duration of their terms. That is what we mean when we say that one candidate has been elected and another defeated. No losing candidate is entitled to the electoral equivalent of a mulligan.

"Moreover, that snapshot can never be duplicated. The campaign, the resources available for it, the totality of the electors who voted in it, and their motivations, inevitably will be different a second time around. Thus, when a court orders a *new* election, it is really ordering a *different* election. It is substituting a different snapshot of the electoral process from that taken by the voting electorate on the officially designated election

day." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *Bortner* v. *Woodbridge*, supra, 250 Conn. 255–56.

With these general principles in mind, we turn to the plaintiffs' contention that the trial court applied the wrong legal standard when it determined that the plaintiffs had not established that they were entitled to an order directing a new primary election pursuant to the portion of § 9-329a (b) providing that, in a proceeding pursuant to that statute, the trial court judge may "order a new primary if he finds that but for [the] . . . mistake in the count of the votes . . . the result of such primary might have been different and he is unable to determine the result of such primary." Specifically, the plaintiffs contend that they were not required to establish that a different candidate *would have* prevailed but for the improprieties in the absentee ballot process, but only that "(1) there were substantial violations of the requirements of [§ 9-329a (a)], such as errors in the rulings of an election official or officials or mistakes in the counts of the votes]; and (2) as a result of those [errors or mistakes], the reliability of the result of the election is seriously in doubt." (Footnote omitted; internal quotation marks omitted.) *Bauer* v. *Souto*, supra, 277 Conn. 840.

This court previously has had occasion to construe the phrase "the result of such primary might have been different" as used in § 9-329a (b). In *Penn* v. *Irizarry*, 220 Conn. 682, 688, 600 A.2d 1024 (1991), this court observed that the word "might," as used in this provision, was ambiguous because of "the various gradations of meaning that lexicographers attribute to the word, which include 'probability' as well as 'possibility.' " We then stated that "[t]he ambiguity inherent in the use of 'might' in the first condition cannot be allowed to obfuscate the relative clarity of the second condition, inability to determine the outcome of a primary election." Id. Because the trial court in *Penn* had "concluded that [it] was able to determine the result of the contested primary, because [it] found that the various irregularities relied upon had not affected the outcome," and because "[t]he plaintiff [had] not challenged that factual finding except by pointing to the possibility of a different result," this court concluded that the trial court correctly determined that the plaintiff was not entitled to a new primary. Id.

In *Caruso II*, supra, 285 Conn. 649, the plaintiff contended that this court in *Penn* had "too literally construed the language in . . . § 9-329a, so that basically [the plaintiff's] burden became showing that but for the irregularities there *would have been* a different result . . . ."[6] (Emphasis in original; internal quotation marks omitted.) The plaintiff contended that this court should adopt the standard that the court had applied in *Bortner* v. *Woodbridge*, supra, 250 Conn. 241, when construing

a similar provision of § 9-328. In *Bortner*, this court held that, to be entitled to an order for a new election, the plaintiff was not required to show that he *would have* prevailed in the election but for the alleged irregularities. Id., 258. Rather, the plaintiff must show that "(1) there were *substantial* violations of the requirements of the statute . . . and (2) as a result of those violations, the reliability of the result of the election is *seriously in doubt*." (Emphasis added.) Id.

We agreed with the plaintiff in *Caruso II* that our interpretation of § 9-328 in *Bortner* should guide our interpretation of § 9-329a (b). See *Caruso II*, supra, 285 Conn. 649–50 n.25. We then observed that the trial court in that case repeatedly had stated "that the plaintiff could not prevail unless he established that, but for [the conduct complained of], the result of the primary election 'might have been different.' " Id., 650. In addition, the trial court had indicated that the plaintiff must establish that "the result of the election [was] seriously in doubt." (Internal quotation marks omitted.) Id. We concluded, therefore, that the trial court had applied the proper standard. Id. Thus, we clearly held in *Caruso II* that the phrase "the result of [the] primary might have been different," as used in § 9-329a (b), means that the reliability of the election result is seriously in doubt due to substantial violations of § 9-329a (a) (1) or (2).

In the present case, the trial court stated three times in its memorandum of decision that it would be authorized to order a new primary if it found that the result of the first primary "might have been different." The court, quoting *Bortner* v. *Woodbridge*, supra, 250 Conn. 263, also observed that the plaintiffs were required to prove by a fair preponderance of the evidence that " '(1) there were . . . substantial mistakes in the count of the votes; and (2) as a result of those errors or mistakes, the reliability of the result of the election . . . is seriously in doubt.' " Thus, although the trial court stated at one point in its memorandum of decision that the plaintiffs had failed to establish that the "the result of the primary would have been different" but for the mistake in the count of the votes, when the memorandum is read in its entirety, it is clear that the trial court properly understood and applied the "might have been different" standard. See *Caruso II*, supra, 285 Conn. 650 n.26 (rejecting plaintiff's claim that single reference to "would have been different" standard showed that trial court applied that standard when it repeatedly cited correct "might have been different" standard [emphasis omitted; internal quotation marks omitted]).

To the extent that the plaintiffs contend that the requirement under *Bortner* v. *Woodbridge*, supra, 250 Conn. 263, that they establish that "the reliability of the result of the election . . . is seriously in doubt" does not require them to establish that there is a significant

risk that the *result* would have been different but for the conduct complained of, but only that there were significant improprieties in the election *process*, we expressly held to the contrary in *Caruso II*, supra, 285 Conn. 618. We stated in that case that, "[a]lthough we are mindful of the difficulties that plaintiffs face in meeting [the heavy burden of *proving* by a preponderance of the evidence that any irregularities in the election process actually, and seriously, undermined the reliability of the election *results*] in light of the statutory time constraints on election contests and the magnitude and complexity of the election process, our limited statutory role in that process and our need to exercise great caution when carrying out that role compel the conclusion that *proof of irregularities in the process is not sufficient to overturn an election in the absence of proof that any of the irregularities actually affected the result.*" (Emphasis altered.) Id., 653. It is also clear that the phrase "reliability of the result" means the reliability of the voters' choice of candidate and not the reliability of the precise vote count. For example, if an election result were 1000 votes for candidate A and 1200 votes for candidate B, the fact that the plaintiff established that candidate A actually received 1010 votes and candidate B actually received 1190 votes would not entitle the plaintiff to a new election on the ground that the initial count was unreliable because it would still be clear that candidate B was the winning candidate. We conclude, therefore, that the trial court applied the proper legal standard.

We further conclude that the trial court properly found that, under this standard, the plaintiffs had failed to establish that the reliability of the result of the primary election is seriously in doubt. Indeed, they have not expressly challenged any of the court's factual findings or legal conclusions as to which absentee ballots should have been counted, and they have not pointed to any evidence that would compel a finding that there is a serious risk that Moore or any of the other candidates who lost in the primary election would have won in the absence of the improprieties in the handling of the absentee ballots. Accordingly, we conclude that the trial court correctly determined that the plaintiffs failed to establish that they were entitled to an order directing a new special primary election.

The judgment is affirmed.

In this opinion the other justices concurred.

* November 29, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendants are Joseph P. Ganim, who, at the time that this action was brought, was the mayor of the city and a candidate for reelection; Charles D. Clemons, Jr., the city's town clerk and a candidate for reelection; Santa I. Ayala, the Democratic registrar of voters for the city; Patricia A. Howard, the deputy Democratic registrar of voters for the city; James Mullen, the head moderator for the primary election; Thomas Errichetti, the head moderator of absentee ballots for the primary election; Lydia Martinez, who, at the time that this action was brought, was the city clerk and a candidate

for reelection; and Jorge Cruz, the candidate for city council in the 131st district of the city.

[2] General Statutes § 9-329a (a) provides in relevant part: "Any (1) elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to (A) section 9-423, 9-425 or 9-464, or (B) a special act, (2) elector or candidate who alleges that there has been a mistake in the count of the votes cast at such primary, or (3) candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the Superior Court for appropriate action. . . ."

[3] See *Bortner* v. *Woodbridge*, 250 Conn. 241, 255, 736 A.2d 104 (1999) (discussing importance of preserving "snapshot" character of election that "is preceded by a particular election campaign, for a particular period of time, which culminates on a particular date").

[4] "Nunc pro tunc, [literally] now for then, refers to a court's inherent power to enter an order having retroactive effect. . . . When a matter is adjudicated nunc pro tunc, it is as if it were done as of the time that it should have been done." (Internal quotation marks omitted.) *State* v. *Connor*, 152 Conn. App. 780, 799, 100 A.3d 877 (2014), rev'd on other grounds, 321 Conn. 350, 138 A.3d 265 (2016).

"The underlying principle on which judgments nunc pro tunc are sustained is that such action is necessary in furtherance of justice and in order to save a party from unjust prejudice . . . caused by the acts of the court or the course of judicial procedure. In other words, the practice is intended merely to make sure that one shall not suffer for an event which he could not avoid." (Internal quotation marks omitted.) *Gary Excavating Co.* v. *North Haven*, 163 Conn. 428, 430, 311 A.2d 90 (1972); see also *Feehan* v. *Marcone*, 331 Conn. 436, 488, 204 A.3d 666 ("it is a [well established] prerogative of the [c]ourt to treat as done that which should have been done" [internal quotation marks omitted]), cert. denied,     U.S.    , 140 S. Ct. 144,     L. Ed. 2d     (2019). As the circumstances of the present case show, because of the time constraints on elections and the complexity of election contests, there is a significant risk that a plaintiff in a primary election contest may, through no fault of his or her own, be unable to obtain a final judgment, including the resolution of any appeal, before the general election takes place.

[5] In light of this conclusion, we need not address the plaintiffs' contention that the evidence that the trial court excluded on the ground that it was relevant only to the plaintiffs' claim pursuant to § 9-329a (a) (1) supports the conclusion that the primary election result was unreliable. We note that the plaintiffs do not claim on appeal that this evidence was relevant to their claim pursuant to § 9-329a (a) (2), and they have not challenged the trial court's evidentiary rulings on any other grounds.

[6] We stated in *Caruso II* that this court "did not conclude in *Penn* that a plaintiff cannot prevail in an action under § 9-329a if the trial court is able to determine the result of an election, *regardless* of how unreliable that determination is. We concluded only that the plaintiff in *Penn* could not prevail because the trial court had found that the official misconduct *had not affected the outcome* and the plaintiff had not challenged that finding." (Emphasis in original.) *Caruso II*, supra, 285 Conn. 649. We acknowledge that the plaintiff in *Penn* contended on appeal that he was entitled to an order directing a new primary because there was a *possibility* of a different result. *Penn* v. *Irizarry*, supra, 220 Conn. 687–88. Thus, it is difficult to reconcile our conclusion in that case that the trial court "was able to determine the result of the contested primary, because [it] found that the various irregularities relied upon had not affected the outcome"; id., 688; with our acknowledgement that the "might have been different" language in § 9-329a (b) could mean the mere possibility of a different result. In other words, if "might have been different" means that a new election should be ordered if there is a mere possibility of a different result, it is difficult to see how a court could, at the same time, *both* (1) be able to determine the result of the contested primary so as to obviate the need for a new primary *and* (2) conclude that there was a possibility of a different result. In any event, it is clear from our analysis in *Caruso* that proof of a mere possibility of a different result is not sufficient to entitle the plaintiff to an order directing a new primary. Rather, the plaintiff must establish that "the reliability of the result of the election is *seriously in doubt*." (Emphasis in original; internal quotation marks omitted.) *Caruso II*, supra, 649.